WILFORD JENNINGS *et al.*

*v.*

JAMES S. NEVILLE, Admr.

*Opinion filed June 17, 1899.*

1. GIFTS—*when transfer of note constitutes a completed gift.* A completed gift *inter vivos* is established by evidence that the owner of a note assigned the same to his son and delivered it to the latter's agent without reserving any control thereover, and that the agent thereafter held the note for the son, collecting and paying over the interest thereon to the latter during the donor's lifetime.

2. BILLS AND NOTES—*when agreement to cancel notes on payment of less sum is inoperative.* A written agreement, not executed with the formalities of a will, made between grantor and grantee and delivered in escrow with notes evidencing the consideration recited in a deed executed the same day, by which agreement the notes

are to be canceled upon the grantee's payment, after the grantor's death, of certain legacies mentioned in the latter's will of less amount than the face value of the notes, is inoperative, when not carried out before the grantor's death, as being an attempted testamentary disposition of the notes. (PHILLIPS, J., dissenting.)

*Neville* v. *Jennings*, 75 Ill. App. 503, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

SAMPLE & MORRISSEY, for appellants:

The deed, the contract and the two notes were parts of one entire transaction. The contract setting out to whom, when and how much was to be paid on said notes is but a part of that transaction, and evidences the consideration for said land. The court will not, under the guise of construction, make a new contract for the parties. *Spear* v. *Griffith*, 86 Ill. 552.

The note and the written agreement as to the mode in which it should be payable, having been executed together, are to be considered as one agreement. *Bradley* v. *Marshall*, 54 Ill. 173.

A promissory note, as well as a deed, may be delivered as an escrow. The law of escrow is substantially the same in both cases. *Baum* v. *Parkhurst*, 26 Ill. App. 128.

Death does not revoke authority to deliver deeds or contracts on a compliance with the conditions imposed. 164 Ill. 614; 159 id. 394; 155 id. 284; 77 id. 475; *Hatcher* v. *St. Andrews Church*, 37 Mich. 264.

The unconditional delivery of a note to a third person, who holds possession as agent of the donee until after the death of the maker, is a good delivery. *Shaw* v. *Camp*, 160 Ill. 425; 61 Ill. App. 65.

The death of the parties to a contract of escrow does not affect it. A bill or note, as well as a deed, may be delivered as an escrow,—that is, delivered to a third

party to hold until a certain event happens or certain conditions are complied with. And it matters not that the actual delivery is not to take place until after the death of the promisor. 1 Daniel on Neg. Inst. sec. 68.

J. H. ROWELL, JACOB P. LINDLEY, and FIFER & BARRY, for appellee:

An agreement to take a less sum in satisfaction of a larger debt is void, as being without satisfaction. *Hayes* v. *Insurance Co.* 125 Ill. 626; *Insurance Co.* v. *Rink*, 110 id. 538; *Ostrander* v. *Scott*, 161 id. 345.

If a gift does not take effect by delivery of immediate possession, it is then not properly a gift, but a contract; and this a man cannot be compelled to perform but upon good and sufficient consideration. Cooley's Blackstone, (3d ed.) book 2, p. 441.

It is essential to a gift that it goes into effect at once and completely. If it regards the future it is but a promise without consideration, and cannot be enforced and has no legal validity. Parsons on Contracts, 263.

An agreement to release a claim unless there be a consideration shown is a mere *nudum pactum*. *Wilson* v. *Kellar*, 9 Ill. App. 348.

To discharge a debt due on a note by way of gift, a release under seal, or for a consideration, or an actual delivery or cancellation of the notes, is essential. There must be such a delivery as to make the disposal of the thing irrevocable. *Kidder* v. *Kidder*, 33 Pa. St. 268; *In re Campbell's Estate*, 7 Barr, 100; *Timmerman* v. *Streeper*, 75 Pa. St. 150.

The donor must be in no position to re-possess himself of the subject matter of the gift or to recall the same. *Little* v. *Willets*, 55 Barb. 125; *Peeler* v. *Guikey*, 27 Tex. 356.

When the future delivery is to depend upon the payment of money or the performance of some other condition it will be deemed an escrow. If it be expressly delivered as an escrow, to be delivered at a future time,

it is not a present conveyance.    6 Am. & Eng. Ency. of Law, 864, 865.

When a deed is delivered merely as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed.    It is not the grantor's deed until the second delivery is made.   6 Am. & Eng. Ency. of Law, 867; *Skinner* v. *Baker*, 79 Ill. 499; 3 Washburn on Real Prop. 270.

To constitute a valid gift *inter vivos*, possession and title must pass to and vest in the donee, or in a trustee for the donee.   If anything remains to be done to complete the gift, what so remains to be done cannot be enforced as it is based upon no consideration, and when the gift is thus incomplete there is a *locus pœnitentiæ*, and the gift may be revoked.   *McCartney* v. *Ridgway*, 160 Ill. 156.

A gift *inter vivos* cannot be made to take effect in possession *in futuro*.    Nor will equity interpose to perfect a defective gift or voluntary settlement made without consideration.   *McCartney* v. *Ridgway*, 100 Ill. 156.

If an attempted or intended disposition of property is of a testamentary character, not to take effect in the owner's lifetime, such disposition will be inoperative unless declared in writing in conformity to the Statute of Wills.   *Comer* v. *Comer*, 120 Ill. 420.

Mr. JUSTICE BOGGS delivered the opinion of the court:

A citation was issued against appellants in the county court of McLean county, under the provisions of the 80th section of chapter 3 of the Revised Statutes, on the application of appellee, and proceedings were had thereunder seeking to require appellants to disclose their knowledge of any evidences of indebtedness or effects belonging to the estate of Joseph Jennings, for which appellee was administrator, which it was alleged they had concealed. During the examination in the county court it was disclosed that three promissory notes in controversy were

in the possession of F. Y. Hamilton, who had been the attorney of Joseph Jennings in his lifetime, whereupon he was made a party defendant to the proceedings.

The county court found that a promissory note for $2737.50, executed by J. B. Morseman to Josephine Murphy, and by Josephine Murphy endorsed to Joseph Jennings, in the hands of Hamilton, with an endorsement from Joseph Jennings to Wilford Jennings, was part of the estate of Joseph Jennings, and ordered Hamilton to turn it, with $172.62 interest collected thereon, over to the administrator. It found that two notes in the possession of Hamilton, dated October 2, 1894, one for $3310 and the other for $3309.20, both signed by Wilford Jennings and payable to Joseph Jennings, did not belong to Joseph Jennings at the time of his death, and refused to order them to be delivered to the administrator. The latter appealed to the circuit court of McLean county, where the case was heard, by agreement, upon the same evidence and the same judgment was entered. Both parties then appealed to the Appellate Court. The administrator assigned as for error the holding of the circuit court that the two notes executed by Wilford Jennings to Joseph Jennings were not part of the estate, and its refusal to hold that Wilford should turn over to the administrator, as part of the estate, the proceeds of certain stock which Joseph Jennings held in his lifetime in Shinkle's Loan Association and which was collected by Wilford in 1894. Appellants assigned as error the holding of the court that the note executed by J. B. Morseman was part of the estate and ordering it to be delivered to the administrator. In the Appellate Court the decree of the circuit court, so far as it related to the Morseman note, was affirmed, but it was reversed so far as it related to the two notes executed by Wilford Jennings, and the cause was remanded, with directions to decree that the two last mentioned notes are part of the estate of Joseph Jennings and order them delivered to the administrator.

From this judgment of the Appellate Court this appeal has been prosecuted by said Wilford Jennings.

From the evidence it appears that the stock in Shinkle's Loan Association was assigned to appellant by his father, Joseph Jennings, the deceased intestate, and was recognized and treated as appellant's property, and he exercised ownership over it long before his father's death. It also appears that no question was made as to the ownership of the stock anterior to the appeal to the Appellate Court. Even if there was error in the judgment with reference to that question by the trial court, it could not be availed of in an appellate tribunal if there raised for the first time. Neither was there error in the finding of the trial court on that question, nor in the affirmance of the judgment on that question by the Appellate Court.

The evidence shows that Joseph Jennings, the deceased, died March 17, 1897. Some years prior to the date of his death he purchased property in the city of Normal and the title was taken in the name of his wife. She, by will, devised that property to her two daughters, both of whom were married, viz., Mrs. Murphy and Mrs. Story. The mother died in 1893, and the daughters sold and conveyed that property to one J. B. Morseman, who made notes to the daughters, secured by mortgage, evidencing the purchase price. Mrs. Josephine Murphy held one of these notes for the sum of about $2537.50. After the death of his first wife Joseph Jennings invested about $11,000 in California lands, which he subsequently disposed of, some of which Mrs. Murphy purchased from him and she assigned the Morseman note above mentioned to her father in part payment thereof. He placed the note in the hands of F. Y. Hamilton, one of the appellants, for safe keeping. Hamilton was then the custodian of the note for Joseph Jennings, deceased. While the note was so in the custody of Hamilton, the owner thereof, Joseph Jennings, came to Hamilton's office and told Hamilton he wanted to give the note to his son, Wil-

ford, the appellant, and requested Hamilton to write an assignment of the note to Wilford. Hamilton wrote an assignment as requested, and Joseph Jennings signed the same and handed the note back to Hamilton to hold for Wilford, the son. Hamilton collected the annual interest due thereon in May, 1895, and paid the same to Wilford. In May, 1896, he again collected the interest and again paid the same to Wilford. The father lived until March 17, 1897. The note was not actually in the hands of Wilford. Hamilton did business for both father and son and was entrusted with papers of both father and son. The son paid no consideration for the note, and the question is whether the gift of the note was a completed gift *inter vivos.*

Counsel urge as being conclusive of the point against Wilford, that the latter, while on the witness stand, testified that he had no interest in the Morseman note and claimed none. We have consulted the record with reference to this contention, and think it clear Wilford was endeavoring to state he claimed no interest in the proceeds of the sale of the property in the city of Normal which his mother owned at the time of her death and which she devised to her daughters, Mrs. Murphy and Mrs. Story; that he understood his sisters were entitled to the notes which had been given as the purchase price of the Normal property and he had no interest in the proceeds of the sale of that property. The facts were, the note in question was given to Mrs. Murphy by the purchaser of the Normal property, and that she assigned it to her father in part payment of the price of some property in California which she purchased of her father, and it seems Wilford did not know the note about which the contention arose was one that Mrs. Murphy had assigned. His statement did not justify a conclusion against him, but the proper solution of the contention was left to depend upon whether a completed gift *inter vivos* was established by the proof. The rules of law relating to

such gifts have been long established. Delivery of the subject matter of a gift *inter vivos* is necessary to the validity of such a gift. Words of gift are not sufficient, but there must be an actual and positive change of possession. Delivery to the agent of the donor, to be by such agent delivered to the donee, is not effectual if the donor dies before the agent has carried out his instructions, as the death of the principal revokes the authority of the agent. But if the donor delivers the property to an agent of the donee and parts with the possession and all right of control over the property, and the agent is invested with actual possession thereof, the gift becomes complete though the donee does not himself have the manual possession of the property. The possession of the agent is the possession of the principal—the donee. That Joseph Jennings intended to vest Wilford with the full and complete and immediate ownership of the note cannot be denied. That he supposed he had done so is equally clear. That the gift was to take effect *in presenti* is unmistakable. Such is the testimony of Hamilton. There was no contervailing testimony, and the payment of the interest for two years to Wilford is inconsistent with any other position. The proper view is, that when Joseph Jennings, after writing his name to the assignment upon the note, handed the note to Hamilton he intended Hamilton should receive it as the agent of Wilford. Hamilton so understood that such was the effect of the acts of Joseph, and Joseph had a like understanding. Hamilton, the father and the son all acted upon this understanding. The father reserved no control over the note but actually abandoned all dominion over it. Hamilton received the note from the father as the agent of Wilford and so ever afterwards held it. The conclusion seems irresistible that the gift *inter vivos* was complete. The finding to the contrary by the circuit court was erroneous and the Appellate Court erred in affirming such finding.

On the second day of October, 1894, Joseph Jennings executed and delivered to Wilford Jennings a deed conveying to said Wilford 82.74 acres of land. The deed recited a consideration in the sum of $6619.20, and Wilford executed two notes therefor, one for $3310, due one year after date, and the other for $3309.20, due two years after date, each specifying they were non-interest bearing. On the same day Joseph executed a will making bequests to Emeline LaRue (a daughter) and to the children of Lucinda Janes (a daughter) who were living on the sixth day of June, 1890. On the same day the following instrument was executed, to-wit:

*"October 2, 1894.*

"It is hereby agreed by and between Joseph Jennings and Wilford M. Jennings, both of McLean county, Illinois, that two notes dated October 2, 1894, for $3310 and $3309.20, respectively, given by Wilford M. Jennings to Joseph Jennings, shall be left in escrow with F. Y. Hamilton on the following conditions and terms: Upon the death of said Joseph Jennings the said Wilford M. Jennings shall pay the bequests made by the said Joseph Jennings by his last will and testament, as follows, viz.: To Emeline LaRue, or her children in case of her death, the sum of $1200, as specified in said will, and to the children of Lucinda Janes living on the 6th day of December, 1890, the sum of $1000, (one thousand dollars,) as specified in said will, and when all of said payments shall have been made by the said Wilford M. Jennings then the notes herein described shall be canceled and delivered up to the said Wilford M. Jennings as fully paid up and discharged. Receipts from said parties, or their legally constituted representative or representatives, shall be sufficient evidence to the said Hamilton for the delivery of said notes under this agreement.

"Dated the day and year first above written.

JOSEPH JENNINGS,<br>WILFORD JENNINGS."

This instrument, and the two notes therein referred to, were delivered to said Hamilton. Joseph Jennings, who was a widower, re-married in November, 1894. The will referred to in the instrument was destroyed soon after the second marriage and a second will executed. The second will was destroyed by the testator in the

spring of 1895. No other will was executed, and Joseph
Jennings died intestate on March 17, 1897. The escrow
agreement and the notes remained in the hands of Ham-
ilton during the lifetime of Joseph Jennings and were
produced in the county court by him. A payment in the
sum of $1000 was endorsed on the $3310 note on Decem-
ber 1, 1895. The county court held the notes were no part
of the assets of the estate of Joseph Jennings, deceased.
The circuit court affirmed the holding, but the Appellate
Court reached a different conclusion and adjudged the
notes belonged to the estate of the payee, Joseph Jennings.

Even if the instrument should, as the appellant con-
tends, be construed to be an agreement that he should
be allowed to discharge both notes by the payment of a
smaller sum to his sisters or their children, it could not
be so enforced for the lack of consideration to support it.
An agreement that a smaller sum shall be received in
discharge of an indebtedness in a larger amount is with-
out consideration and cannot be enforced as against the
holder of the debt. (*Ostrander* v. *Scott*, 161 Ill. 339.) The
testimony of Wilford tended to show that Joseph Jen-
nings contracted to sell the land to him for $3200. The
deed, however, recited that the consideration for the land
was $6619.20. The father exacted of Wilford, and the
latter executed, two notes, amounting in the aggregate
to the exact sum mentioned in the deed. These notes
were given for the land. The evidence showed the land
was worth even more than the amount of the two notes.
While it is admissible to show the consideration for a con-
veyance was different from that mentioned in the deed,
the testimony of Wilford cannot be regarded as sufficient
to overcome the other evidence as to the real truth of the
matter. The true state of the case, as we think it is un-
mistakably established by the evidence, is, that Joseph
Jennings sold the land to Wilford for $6619.20; that the
notes were executed to secure the payment thereof; that
Joseph Jennings attempted to make a testamentary dis-

position of the $3200 of the notes to Emeline LaRue and the children of Lucinda Janes and the remainder to Wilford, but not to take effect during the lifetime of the donor. The disposition of the property attempted to be made was not absolute, but was executory and testamentary in character. It was not declared by a writing executed in conformity with the statute relating to wills, and was for that reason inoperative. (*Comer* v. *Comer*, 120 Ill. 420.) It could not be upheld as a gift *inter vivos*, for the reason it was not carried to completion by delivery of the subject matter of the gift. We concur in the conclusion reached by the Appellate Court that these two notes were assets of the estate of Joseph Jennings, deceased.

The judgment of the Appellate Court as to the disposition of the note given by Morseman to Mrs. Murphy is reversed, otherwise the judgment of that court is affirmed. The cause is remanded to the county court, with directions to enter a judgment, order or decree directing said Hamilton to deliver to the appellee administrator the notes executed by appellant Wilford Jennings to Joseph Jennings, and to deliver to Wilford Jennings the note payable to Mrs. Murphy and assigned by Joseph Jennings to Wilford Jennings. The costs in this court will be paid as follows: One-half by Wilford M. Jennings and the other half by the appellee administrator in due course of administration.          *Reversed in part and remanded.*

Mr. JUSTICE PHILLIPS, dissenting:

I concur with the majority of the court as to what is said in the foregoing opinion as to the stock in Shinkle's Loan Association and the Morseman note, but do not concur in the opinion or judgment as to the two notes, aggregating $6619.20, which, with the contract, were left with F. Y. Hamilton. The notes and the contract set forth in this opinion of the court were made at the same time the deed was executed, and the notes, contract and deed constituted one entire transaction. The execution of the will

was not a necessary part of the deed, notes or contract. The construction of the latter as an entire transaction in no manner depended on the will, which was controlled by Joseph Jennings alone.

The testimony of Hamilton in reference to the notes and this contract was: "I drew the notes, and they were left with me in my possession. I drew them for both of them—for Mr. Joseph Jennings and Wilford Jennings. * * * They both signed the contract and notes and both said I should keep the notes and contract in escrow, and they were put in my vault, and have been there ever since until I brought them over here this morning." He was asked, "Who owned that land, as you understand?" and answered: "Joseph Jennings. He said he intended to make him a deed for some time. He came up one day and asked me to write to Wilford to come in,—that he wanted to fix up that land business,—and I wrote to Wilford and he came in and was present there. He said, 'I want to give Wilford this land, except he must pay these two sisters out of it,' and I asked him if he was to take a mortgage for the balance of the purchase money. He said, no; that when Wilford paid these two girls, or their children, as specified in the contract and in the will, the amounts named in them, then he is to have the balance of it. * * * I did the writing for both the contract and the notes. Mr. Wilford Jennings signed both the contract and the notes and Mr. Jennings signed the contract, and I wrote the deed and delivered the deed to Mr. Wilford Jennings and he took it over to have it recorded. Then I drew this statement in escrow, put it in an envelope and sealed it up in the presence of both of them."

Under the citation Wilford Jennings was required to answer on oath. His testimony in substance was: "It was understood for a good while that father was to sell me this eighty acres of land before my mother died. We talked some about it,—that he wanted his daughters to

have so much and I was to have this eighty acres, and by paying him this much he would give me a deed." He was asked, "How came you to give your father these two notes, one for $3310 and the other for $3309.20?" and answered: "This included that transaction for that eighty acres spoken of this morning. I did swear that the contract price for that land was $3200, and I paid $1000 on that, as I stated this morning. I agreed that if he deeded me this eighty acres of land I would pay it. When this escrow agreement was originally drawn it provided for $2000 for the children of Lucinda Janes. It now calls for $1000. After I sent the $1000 to my sister Mr. Hamilton was notified of that fact, and he made the change from $2000 to $1000. I do not know who was present when that change was made. I suppose father was."

From this evidence it is apparent that these notes were placed in escrow, and by the contract, which must be construed in connection with the notes, the intention of the parties must be determined and construed. A court cannot take these notes out of escrow and make a new and different contract for these parties other than that which was made by them. It is said in Daniell on Negotiable Instruments, (vol. 1, sec. 68): "A bill or note, as well as a deed, may be delivered as an escrow,—that is, delivered to a third party to hold until a certain event happens or certain conditions are complied with. * * * And it matters not that the actual delivery is not to take place until after the death of the promisor."

In *Fort* v. *Richey*, 128 Ill. 502, a contract was made by which a father deeded to his son certain lands for the express consideration of $5000. A written contract was subsequently entered into, by which the manner and amount of payment was changed. In that case it was held (p. 507): "It cannot be doubted that the contract and deed are parts of the same transaction and that they should therefore be construed together. True, they bear different dates, the deed being dated July 30 and the

contract August 5; but both relate to the same subject matter and are based upon the same consideration, the contract being given in consideration of $2500 of the purchase money named in the deed. The deed, by expressing a consideration of $5000, did not necessarily import that that sum was to be paid by the vendee to the vendor in any event, so as to create an indebtedness existing independently of their cotemporaneous agreement fixing the mode of payment and determining the amount which should be ultimately paid. It was competent for the parties, notwithstanding the recital in the deed, to agree upon a different consideration or to agree that the consideration recited should be payable only conditionally, and as they have entered into such contract and reduced it to writing the same conclusive presumptions arise as in other cases, that all the terms of their contract are embodied in the writing."

In *Spear* v. *Griffith*, 86 Ill. 552, a father deeded land to his son, which, in part, was to be paid for by the payment of a certain amount by the grantee to two other brothers, and the residue of the price was to belong to the grantee. The consideration exceeded the amount to be paid to the two brothers. It was held he took as purchaser, and the contract limited the amount to be paid.

In the contract enclosed in the envelope with the notes reference is made to bequests made by Joseph Jennings in his last will and testament. No will seems to have been found, but the contract refers to its provisions, as follows: "Upon the death of said Joseph Jennings the said Wilford M. Jennings shall pay the bequests made by the said Joseph Jennings by his last will and testament, as follows, viz.: To Emeline LaRue, or her children in case of her death, the sum of $1200, as specified in said will, and to the children of Lucinda Janes living on the 6th day of December, 1890, the sum of $1000, as specified in said will, and when all of said payments shall have been made by said Wilford M. Jennings then the notes herein

described shall be canceled and delivered up to the said Wilford M. Jennings as fully paid and discharged." By this provision of the contract, which was made at the same time as the notes, and which had reference to the purchase price mentioned in the deed, the amount of the consideration in the deed was changed and a stipulation made by the contract which must be construed with the notes, which stipulation provided for the notes to be entirely satisfied by the payment of a less sum than therein mentioned. The parties had a right to so contract and so provide for the satisfaction of the notes by the payment of a lesser sum than that mentioned in them, and such contract between the parties so contracting is valid and binding. The fact of the destruction of the will in no manner renders the contract ambiguous, because the recitation in the contract of the bequests made is explicit and clear.

The consideration mentioned in the deed as expressed by the notes is qualified by the contract, which provided that both the consideration mentioned in the deed and the amount of the notes could be liquidated by the payment of the amount expressed in the contract. It was within the power of the parties to so contract, and having so contracted it is not the province of the court to make a contract for them or change the terms of the one made, where it is clear and explicit.

The facts of the case are still open for discussion and adjudication by this court. This proceeding partakes of the elements of chancery jurisdiction that require this court, on appeal, to consider the questions brought up on this character of record. *Martin* v. *Martin,* 170 Ill. 18.

The finding of the circuit court that the payment as provided for in the contract was for the satisfaction of the two notes, which payment is shown by the evidence, in my opinion was correct, under the evidence in this case, hence I am unable to concur in that part of the opinion or judgment.