## In re Estate of Luella B. Trubey, deceased.

### Esdras B. Trubey, Administrator, Appellant, v. Arthur B. Pease, Appellee.

### Gen. No. 14,082.

1. GIFTS—*what essential to validate.* In order to constitute a valid gift there must not only be an intention to make the gift but an actual delivery of the *res.*

2. GIFTS—*what not valid, notwithstanding intention to make is clear.* A gift is not complete and does not satisfy the legal require-

ments if the agent of the donor who is given possession of the *res* with instructions to deliver the same to the intended donee, does not actually make such delivery.

Petition in court of probate. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1907. Reversed and judgment here. Opinion filed December 7, 1908. Opinion amended and refiled January 4, 1909.

**Statement by the Court.** The appellant, administrator of the estate of Luella B. Trubey, to collect, filed his petition in the Probate Court of Cook county, praying for an order on Arthur B. Pease, the appellee, to turn over to the estate the following described property, alleged to be in his possession:

Note of Gottfried and Lena Andres, dated May 26, 1902, for $600, due in five years from date, payable to the order of the makers and by them endorsed, and four interest notes for $18 each and trust deed securing said notes, executed by the same parties to Fayette S. Munro, trustee.

Note of William T. Sanford for $1,000, dated January 18, 1904, due three years after date, and four interest notes for $30 each, payable to the order of the maker and by him endorsed, and a trust deed securing said notes, executed by the same party to Arthur B. Pease, trustee.

Note of Christine and Entrofus Johnson for $2,500, dated January 28, 1901, due in five years after date, and two interest notes for $75 each, all signed by the makers, payable to themselves and by themselves endorsed, and a trust deed securing the same, executed by the same parties to Arthur B. Pease, trustee.

Note of Robert Bartlett for $1,500, dated March 2, 1904, due three years after date, and four interest notes for $45 each, all signed by Robert Bartlett, payable to himself, and by him endorsed, and a trust deed securing same, executed by Robert Bartlett to Arthur B. Pease, trustee.

Note of Frank and Lizzie Bellis for $500, dated

August 27, 1901, due five years after date, and interest notes 6 to 10 for $15 each, said notes signed by the makers, payable to themselves and by themselves endorsed, and a trust deed securing same, executed by the same parties to Arthur B. Pease as trustee.

Certificate of membership in the Southern Mutual Investment Company No. 3653 for $500, issued to Thomas L. Warren and by him assigned to Mrs. L. B. Marchand, and two coupons attached thereto for $62.50 each.

Certificate of membership No. 3655 in the Southern Mutual Investment Company for $500, issued to Thomas L. Warren, dated May 15, 1900, and by him assigned to Mrs. L. B. Marchand, and coupons 7 and 8 for $62.50 attached thereto.

Certificate of membership No. 3657 in the Southern Mutual Investment Company for $500, issued to Thomas L. Warren and by him assigned to Mrs. L. B. Marchand, together with two coupons for $62.50 each.

Four certificates of membership in the Southern Mutual Investment Company numbered respectively 3654, 3658, 3656 and 3659, each for $500, each having two coupons attached for $62.50 each, and each being issued to Thomas L. Warren and by him assigned to Mrs. L. B. Marchand.

Certificate No. 78 and Certificate No. 79, each for 18,558 shares of the capital stock of the Saratoga Gold Mining Company, issued to L. B. Trubey and by her endorsed in blank.

Certificate No. 50 for two shares and certificate No. 13 for three shares of stock in the Continental Adjustment Company.

Contract between Luella B. Trubey and E. B. Trubey, certificate No. 14 for thirty-five shares of the stock of the Continental Adjustment Company, issued to E. B. Trubey, and certificate of membership in the Bankers Life Association of Des Moines, Iowa, issued to E. B. Trubey, said contract, certificate of member-

ship in said life insurance company and certificate of stock not endorsed.

One open-faced watch, one initial ring, one moss agate ring, one diamond and ruby ring, one pair of diamond ear-rings, one ladies' gold watch and fob, one dozen each silver table knives, table forks and tea spoons, one-half dozen each silver tablespoons, soup spoons and plain silver spoons; one small fork and several small spoons, and one bag containing miscellaneous articles.

Such proceedings were had in the matter of said petition that, November 14, 1906, the said court found that all of said property was the property and assets of the estate of Luella B. Trubey, deceased, and that said deceased had not, during her life, made any valid gift of the same; also, that since the filing of said petition Jettie Richardson had been duly appointed executrix of the last will of Luella B. Trubey, deceased, and had qualified as such, succeeding Esdras B. Trubey, administrator to collect, and the court entered the following order:

"It is ordered that Arthur B. Pease turn over to the executrix of the last will and testament of said Luella B. Trubey all the property mentioned herein, within five days from the date hereof."

From this order the appellee, Arthur B. Pease, appealed to the Circuit Court, where the cause was tried by the court, without a jury, a jury being waived, and the court found that "Luella B. Trubey, in her lifetime, made valid gifts and fully executed the same by delivery of the chattels and securities, as hereinafter described, and to the persons hereinafter named, as follows:

To Johanna Peters, one open-faced gold watch;

To Sophie Pfuhl, one initial ring, letter M, one moss agate ring, and one diamond and ruby three stone ring;

To Jettie Richardson, the following chattels, securities, etc." Here follows a description of the

notes, trust deeds, certificates of membership and of shares of stock, contract between Esdras B. Trubey and Luella B. Trubey, deceased, and certain silverware, all of which are described *supra*. And the court ordered that Arthur B. Pease deliver, forthwith, to the persons named, the said property, describing the property to be delivered to each of said persons.

Mrs. Luella B. Trubey, deceased, had been married to Esdras B. Trubey something more than a year at the time of her death. She had formerly been married to a Mr. Marchand, by whom she had one child, who died before her mother. Mr. Arthur B. Pease is an attorney and a member of the firm of Pierson & Pease, in Chicago. He was Mrs. Trubey's attorney for about five years prior to her death, and wrote her will and a codicil thereto. Mrs. Trubey died June 3, 1905. Mrs. Johanna Peters is Mrs. Trubey's sister; Mrs. Sophie Pfuhl is a sister of Mr. Marchand, deceased, and Mrs. Jettie Richardson is a niece of Mrs. Trubey, deceased. Mrs. Trubey's will is dated December 6, 1904, and the codicil thereto is dated March 16, 1905.

Arthur B. Pease testified, in substance, on the trial in the Circuit Court, that he had in his possession all the property above described, except the note for $2,500 and the trust deed securing the same; that some $1,200 had been paid on the note, and that he was holding the difference between that and the total amount due pending this litigation. He further testified, in substance, as follows: Mrs. Trubey sent to his office for him March 15, 1905, and when he arrived at his office he went to her residence, where she was sick in bed. She told him she wished him to go to her safety deposit box, in the American Trust & Savings Bank vaults, and get from it mortgages, bonds, jewels and different things which she enumerated, and bring them to her. He expressed reluctance to go to her box, on which she expressed great confidence in

him, when he said he would go to the box, but not alone, and she asked Mrs. Woodruffe, who was present, to go with him, and wrote an order on the vault company, and he and Mrs. Woodruffe went to the box and he took from it and brought to Mrs. Trubey the things which she had asked him to bring. Mrs. Trubey then separated the things into three parcels, as she intended them for Mrs. Peters, Mrs. Pfuhl and Mrs. Richardson, and gave to him the names and addresses of said persons, and Mr. Pease then marked each parcel, and wrote the name and address of each person to whom a parcel was to go, on a slip of paper, and put it with the articles in the parcel. The gold case watch for Mrs. Johanna Peters was put in a chamois bag. With three gentlemen's gold rings, which formerly belonged to Mr. Marchand, and which were intended for Mrs. Sophie Pfuhl, he placed a slip with Mrs. Pfuhl's name and address on it. All the other things, except the silverware, which were intended for Mrs. Jettie Richardson, were put in a package, with the slip of paper with her name and address on it. As Mr. Pease was about to leave Mrs. Trubey's room, she said to him, "There is a box with my solid silverware on the dresser. I want Jettie Richardson to have that also," and Mr. Pease wrote Jettie Richardson's name, and put it in the box and took it with him. The following names and addresses were given to Mr. Pease by Mrs. Trubey:

"Mrs. Johanna Peters, Decatur, Ill.; Mrs. Sophie Pfuhl, Harrisburg, Pa.; Jettie Richardson, White Hills, Hardin Co., Ky."

In respect to Mrs. Trubey's directions in regard to the property, he was questioned and answer as follows:

"Q. She didn't tell you when to make delivery to any of these people, did she?

A. She told me to deliver them.

Q. And there was no direction when these were to be delivered to her, Jettie Richardson?

A. She said to give them.''

Mr. Pease further testified, that, as he was leaving Mrs. Trubey's room, he said to her, ''Mrs. Trubey, do you fully realize what you have done; that you have given these things away, and they are going out of your possession?'' and she said, ''Yes, I know what I have done, and I am glad to have it off my mind, for I am liable to wink out any minute, and I will write Jettie Richardson and tell her what I have done, and you will hear from her.''

Mr. Pease never saw Mrs. Trubey after leaving her room March 15, 1905, nor did he meet or communicate with any of the intended donees till after her death, which occurred, as heretofore stated, June 3, 1905. Mr. Pease put all the property, except the silverware, in a safety deposit box in the Chamber of Commerce vaults, which he rented in his own name and had sole control of, and he kept the box of silverware, of which he had the key, in his office vault. Before giving to witness the notes and securities, Mrs. Trubey tore off three or four interest coupons, which were with a few weeks of maturity, and gave them to witness, directing him to collect them for her. Mrs. Trubey wrote to Mr. Pease the following letter on the day of its date:

''March 17, 1905.

''Mr. Pease: I see you have failed to receipt for the $1,500 note on one Bartlett on that Dearborn street loan. Please add it to enclosed receipt and give to Mrs. Woodroffe to bring back to me. Please pay rent due on my vault box and give it up; take all the other papers in there and put them in the new box you have rented. Save any papers that could be put safely with my papers that you have in your office; I have a tin box in your office.

Yours truly,

Mrs. Trubey.

This Bartlett note is—was with my other loan; also send interest coupons for Bartlett loan, which is due, of $45.00.''

Mr. Pease says that he followed the instructions in the letter and gave up her safety deposit box.

Mr. Pease testified that, at the time he drafted Mrs. Trubey's will, she asked him if she could will to Jettie Richardson the property which was subsequently set apart for her, and he told her she could not, that it would go to her husband, and also told her that it was necessary to deliver the property to the several persons for whom it was intended.

"Q. Did you tell her that, at that time, in March, 1905?

A. I don't think it was then; it was talked over very explicitly when I drew the will."

W. W. DE ARMOND and SAMUEL C. HERREN, for appellant.

LOUIS J. PIERSON and GEORGE A. MILLER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The facts disclosed by the evidence are few and simple. Mrs. Trubey was advised by Mr. Pease, her attorney, as he testified, that such gifts as she proposed to make must be delivered to the persons for whom they were intended. March 15, 1905, she turned the property intended as gifts over to Mr. Pease, giving him, at the same time, the names and addresses of the persons for whom it was intended, and directed him to deliver the property to the persons named. Mr. Pease did not communicate with any of the persons whose addresses he had, nor did he deliver any of the intended gifts, and, June 3, 1905, Mrs. Trubey died.

The property has remained in Mr. Pease's possession from the time it was turned over to him by Mrs. Trubey until the present time.

It is elementary law that delivery to the donee is

essential to a valid gift. 2 Cooley's Blackstone, 441; 1 Chitty on Contracts, 11 Am. ed. 60; 1 Parsons on Contracts, 234; 2 Kent's Commentaries, 438; 1 Beach on Mod. Law of Contracts, 203; Barnum v. Reed, 136 Ill. 388, 398; Telford v. Patton, 144 *ib*. 611, 619; Williams v. Chamberlain, 165 *ib*. 210, 218.

In Barnum v. Reed the court say: "To constitute a valid gift *inter vivos* possession and title must pass to and rest in the donee irrevocably. In this respect, alone, a gift *causa mortis* differs from that of a gift *inter vivos*, as in the case of the former it is revocable on the recovery of the donor."

In Telford v. Patton, *supra*, this language is used: "It is essential to a donation *inter vivos*, that the gift be absolute and irrevocable, that the giver part with all present and future dominion over the property given, that the gift go into effect at once and not at some future time, that there be a delivery of the thing given to the donee, that there be 'such a change of possession as to put it out of the power of the giver to repossess himself of the thing given.' "

The law is the same in other jurisdictions. In Williams v. Chamberlain, *supra*, the court say: "It is not intended by anything said in the Otto-Beckwith case to change the rule, which we regard as settled law, that it is necessary to the validity of all gifts, whether *inter vivos* or *causa mortis*, that there be delivery of the subject of the gift or acts equivalent to a delivery." Citing numerous authorities.

Mrs. Trubey delivered to Mr. Pease the intended gifts, and directed him to deliver them to the persons whose names and addresses she gave to him, thereby constituting him her agent for the purpose of delivery to said persons.

In Jennings v. Neville, 180 Ill. 270, 277, the court say: "Delivery to the agent of the donor, to be by such agent delivered to the donee, is not effectual if the donor dies before the agent has carried out his instructions, as the death of the principal revokes the

authority of the agent." In that case there were peculiar circumstances distinguishing it from the present case. Joseph Jennings was the owner of a promissory note, and prior to his death, and while the note was in the custody of one Hamilton, he told Hamilton that he wanted to give the note to his son Wilford, and, by his direction, Hamilton wrote an assignment of the note to Wilford, which Joseph Jennings signed, and told Hamilton to hold the note for Wilford, and, subsequently, during the life of Joseph, Hamilton collected the annual interest on the note for two years, and paid the same to Wilford. Hamilton did business for both Joseph and his son, Wilford, and was entrusted with papers by each of them, and was therefore agent for each of them. Held, that Hamilton's possession of the note was the possession of Wilford Jennings, his principal. "Where delivery is made to a third party, in order that the latter may deliver the subject of the gift to the donee, as agent of the donor, the gift is not complete until there is actual delivery to the donee; and until the gift is completed by delivery, the donor can revoke the agent's authority and resume possession of the gift." Telford v. Patton, 144 Ill. 611, 623; Sessions v. Moseley, 4 Cush. 87, 92; Thornton on Gifts, secs. 31 and 32.

Appellee's counsel contend that Mrs. Trubey lost all control and dominion over the property when she delivered it to Mr. Pease. We fail to see how the case differs in this respect from any case in which the owner of property, intending to give it to another delivers it to an agent, with direction to deliver it to the person intended. The agent, in every such case, necessarily takes the property into his possession, and it is his duty carefully to preserve it till he can deliver it. It is contrary to the well settled law that on the agent taking possession of the property, for the purpose of delivery as directed, his principal loses control over it.

Appellee's counsel also urge that it was Mrs. Tru-

bey's clear intention that the persons named as donees should have the property, and contend that Mr. Pease was a trustee for their use. Mrs. Trubey, without doubt, intended that Mrs. Peters, Mrs. Pfuhl and Mrs. Richardson should have the property; but while the intention to give is essential to a valid gift, delivery is absolutely essential. In Telford v. Patton, *supra,* it is said: "The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, yet, unless there is delivery, the intention is defeated."

In Williams v. Chamberlain, *supra,* the court say: "The intention, without accompanying acts, avails nothing." P. 217.

In Telford v. Patton, 144 Ill. 611, there was no actual delivery to Patton, who claimed as donee; but she claimed that Telford delivered the money to the bank as trustee for her, in regard to which claim the court say: "In the absence of any proof of declarations made by Telford to the bank, and in the absence of any proof as to his intentions in obtaining the certificate, it cannot be said that he was ever wholly divested of control and dominion over the deposit so long as the certificate remained in his possession."

In Williams v. Chamberlain, *supra,* it was claimed that Williams, the alleged donor, created a trust in favor of Chamberlain. The court said of the claim: "Nor does the evidence show that Williams created a trust or constituted himself the trustee of the petitioners, and so held possession of the policies for them. That he might have done so is beside the question. It is sufficient that he did not do so, and we find no evidence in the record that he made the attempt. From a mere imperfect gift a trust cannot be deduced."

In this case Mrs. Trubey declared no trust, nor did she use any language which can be construed as making Mr. Pease a trustee for the use of the intended donees.

The court did not err in overruling appellant's motion to open the cause to admit additional evidence.

In conclusion, we cannot refrain from expressing regret that Mrs. Trubey's intention was not carried into effect. This, however, is the moral aspect of the question, and we are limited to consideration of the strict legal rights of the parties, and are not unmindful that hard cases make bad law. The judgment of the Circuit Court will be reversed and judgment will be entered here, and the judgment heretofore rendered, remanding the cause, will be vacated and set aside.    *Reversed and judgment here.*