DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1911.

## Matthew Spray, Administrator, Appellant, v. C. G. Glen= dinning et al., Appellees.

1. GIFTS—*when ante-mortem valid.* A gift of promissory notes is valid if they were duly endorsed and delivered and the purpose of the delivery was clear and the gift was in all respects complete.

2. GIFTS—*who competent donees.* Unincorporated societies or voluntary associations, such as religious societies, are capable of taking as beneficiaries, ''and it is immaterial that they are not incorporated.''

3. GIFTS—*what not essential to valid delivery.* The rule is well settled that delivery need not be made to the donee personally, but may be made to a third person as trustee or agent, for the use of the donee.

4. COUNTY COURTS—*jurisdiction as to probate matters.* In a proceeding instituted under section 81 of the Administration Act the County Court has jurisdiction to determine the validity of a gift claimed by the respondents to have been made of the property sought to be recovered.

Appeal from the Circuit Court of De Witt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed October 14, 1911. *Certiorari* denied by Supreme Court (making opinion final).

RAYMOND & NEWHALL and HERRICK & HERRICK, for appellant.

JOHN FULLER and L. O. WILLIAMS, for appellee.

*Per Curiam.* This is a proceeding by citation, under

(431)

section 81 of the Act relating to the administration of
estates, commenced in the county court of DeWitt coun-
ty, from the judgment of which court an appeal was
prosecuted to the circuit court, and from the judgment
rendered by the circuit court this further appeal is
taken.

The proceeding is based upon the petition of appel-
lant, stating that he is the administrator of the estate
of George Spray, deceased, and charging in substance
that appellees have in their possession or under their
control, individually or collectively, certain specified
negotiable promissory notes belonging to the estate of
appellant's intestate, which they wrongfully refuse to
deliver over or surrender to appellant. The petition
further charges, that the said notes were taken from
the deceased by appellee, C. G. Glendinning, without
lawful right, and that no lawful consideration was paid
therefor; that said deceased was of unsound mind
and wholly incompetent to transact any business and
that possession of the notes was secured from him
through fraud, undue influence and coercion; and that
appellees, Glendinning, Moore and Wampler, claim to
hold said notes as agents for and on behalf of the
Young Men's Christian Association, of which Glen-
dinning is president, Moore is treasurer and Wampler
is secretary.

The notes specified are twelve in number, and range
in amount from $300 to $4,981.82, aggregating, with
accrued interest, the sum of $18,340; and at the time
of their delivery to appellee Glendinning, and in con-
nection therewith, as part of that transaction, they
were each endorsed on the back thereof by the deceased,
as follows: "Pay to the order of C. G. Glendinning,
Prest. George Spray."

There is no evidence in the record tending to prove
that the deceased was of unsound mind at the time of
the transaction in which the notes in question were en-
dorsed and delivered to Glendinning, nor is there any

evidence tending to prove any fraud, undue influence or coercion of any character. These features of the case are wholly eliminated, for lack of any evidence to support the charges.

The deceased was about seventy-seven years of age. His wife was dead and he had no family. He had some relatives, but of what degree of kinship they were, the evidence does not disclose. He had acquired a fortune to the amount of about $80,000, and had it fully in mind and well in hand. He had resided in the city of Clinton for a long time. Sometime before he died he became interested in the Young Men's Christian Association, and especially in the erection of a Young Men's Christian Association Building in the city of Clinton, his home city. A Young Men's Christian Association was organized there but had no building. The question of erecting a building had recently been under consideration and action was being taken to that end. He had gone to Decatur and Dixon to see such buildings that had been erected in those cities. When pledges were being secured for the Clinton building, he urged others to subscribe, and himself entered into a subscription agreement whereby he pledged the sum of $15,000, and agreed to furnish $3,000 more if needed to complete the building. This pledge agreement was signed by deceased on the 18th day of March, 1908. He began to fail in health soon after he had signed this agreement, but was able to sit up and walk about the house. His mind was clear and he was as competent and able to transact business as he ever was in his life, up to two or three days before his death. About eight or nine days before he died he was informed that the doctor said he could not possibly get well and that if he had any business to attend to he had better do it. He sent for Mr. Lemon, his attorney, and on the first or second consultation with his attorney spoke about making a will and disposing of his property, and especially about making it sure for the Young Men's Chris-

tian Association Building—"always seemed to feel anxious about that." His attorney suggested to him "that if he wanted to make that sure, he should transfer the notes to the association, or to some of them, and he said, well, he would do that." He at once sent to the bank for his box containing the notes, and when it arrived he sat up on the side of the bed and named the amount of the notes he wanted and the name of the maker, and his attorney would find the note in the box, take it out, write the endorsement on the back of it, hand it to him to sign, and he would sign it; and so on until they were all endorsed. When they were all endorsed and figured up, they were delivered to Glendinning, the endorsee, at the request of the deceased and in his presence. Mr. Lemon said: "You want me to turn these notes over to Dr. Glendinning, so the work may go on without stopping?" "And he said, Yes." Mr. Lemon then handed the notes to Glendinning in his presence and Glendinning took them and wrapped them up, and put them by themselves and on the next day, or "right soon," turned them all over to Milton Moore, the treasurer of the association. This occurred on May 16th, one week before the death of the deceased.

There is no room for question or doubt as to the endorsement, the delivery and the purpose. The gift was completely consummated, and the transaction fully meets all that is requisite to a good and valid gift. Hagemann v. Hagemann, 90 Ill. App. 251; Jennings v. Neville, 180 Ill. 270; Martin v. Martin, 170 Ill. 18.

Counsel for appellant contend that Glendinning was the agent of deceased, and if there was a delivery to him it would not be effective, because "one cannot enter into an enforceable obligation with himself." The evidence not only fails to support this contention but it fully disproves it. The deceased acted for himself with the advice and assistance of his attorney, and Glendinning acted for himself as trustee for the Association, of

which he was president, and as agent for that Association. Further in this connection, this gift is in no way dependent upon any of the terms or provisions of the subscription pledge contract signed by the deceased, except that the money realized from the notes given shall be expended for no other purpose than the erection of the contemplated building, and even that is made clear from the evidence without reference to that contract.

Counsel for appellant insist that the gift must fail for want of a donee or beneficiary capable to take. They say that the Young Men's Christian Association at Clinton had not been incorporated at the time this gift was made, and therefore was incompetent to take the gift, or to be recognized as a beneficiary of the gift.

This position is not well taken. The Young Men's Christian Association had been an acting and operating religious organization in the city of Clinton for a long time. The evidence does not show when it first began its work there, but it does clearly show that before and at the time of the making and accepting of the gift in question, it had been and was an organized, acting and active religious society, equipped with proper officers and committees for carrying on its work in the city of Clinton and vicinity.

Unincorporated societies or voluntary associations, such as religious societies, are capable of taking as beneficiaries, "and it is immaterial that they are not incorporated."    20 Cyc. 909-914-915; Ferraria v. Vasconcelles, 31 Ill. 25; Alden et al. v. St. Peters Parish, 158 Ill· 631; Tomlin v. Blunt, 31 Ill. App. 234.

Counsel further contend that the gift was never consummated because the Young Men's Christian Association, the beneficiary of the gift, was not present at the time of the transaction and therefore there could have been no delivery to it. It was present by its president, who acted in that transaction as its trustee and agent. "The rule is well settled that delivery need not be made to the donee personally, but may be made to a third

person as trustee or agent, for the use of the donee." 20 Cyc. 1198; Jennings v. Neville, 180 Ill. 270.

Counsel for appellee raises the question, by suggestion, that the county court had no jurisdiction of the subject-matter of this proceeding. This position is not well taken. The authority cited by counsel is not applicable to the facts of this case. The following cases clearly recognize and establish jurisdiction in the county court over this class of cases: Martin v. Martin, 170 Ill. 18; Coffey v. Coffey, 179 Ill. 283; Jennings v. Neville, 180 Ill. 270; Day v. Bullen, 226 Ill. 72; Wade v. Pritchard, 69 Ill. 279; Hagemann v. Hagemann, 90 Ill. App. 251.

We find no material error in this record. The judgment and decree of the circuit court is affirmed.

*Affirmed.*