## AHLENDORF ET AL. *v.* BARKOUS ET AL.

[No. 2,535.  Filed June 14, 1898.  Rehearing denied Oct. 5, 1898.]

REPLEVIN.—*Demand.*—Where personal property is unlawfully taken it is not necessary to demand the return of the property before bringing an action in replevin.  *p. 658.*

MUTUAL BENEFIT ASSOCIATION.—*Rights of Seceders to Lodge Property.*—Where the majority of the members of a subordinate lodge withdraw from the jurisdiction of the grand lodge, the minority, who continue steadfast in their allegiance, and to whom the charter was again delivered, are, as between them and the seceding majority, entitled to the property of the lodge.  *pp. 659-663.*

From the Lake Superior Court.  *Affirmed.*

*Johannes Kopelke,* for appellants.

*A. F. Knotts* and *L. P. Boyle,* for appellees.

COMSTOCK, J.—Suit by appellees (plaintiffs below), who are members of Court Glueckauf No. 101, operating under the jurisdiction of the High Court of the Independent Order of Foresters of the state of Illinois, against Court Glueckauf No. 1, operating under the jurisdiction of the High Court of the Independent Order of Foresters of the State of Indiana, and the members of said court, for the possession of certain regalia, furniture and other articles constituting the outfit of a lodge.

Appellees are an unincorporated association, but the High Court, under whose jurisdiction they are acting is duly incorporated under the laws of the state of Illinois.  The trial court rendered judgment for the appellees and overruled appellants' motion for a new trial.  This action of the court is assigned as one of the errors in this court, and is the only assignment discussed by counsel.  The reason specified in the motion for a new trial is that the finding of the court is

not sustained by sufficient evidence, and is contrary to law.

Appellees are, and appellants were, with a few exceptions, until the 11th day of December, 1893, members of Court Glueckauf No. 101. On that night, a majority of the members being present, a resolution was passed by said lodge No. 101 to secede from the high court of Illinois, and to join in the organization of a high court for the State of Indiana. Some of the members dissented from the proposition, but subsequently all but ten surrendered their certificates in the old order, pursuant to a notice that such course would be necessary in order to become members of the new order. At the date of said secession, said lodge had eighty-one members in good standing; forty-three were present; twenty-seven voted; twenty-three of these voted for secession and four against. The next meeting of the seceding members, after said 11th day of December, was not held in the old lodge hall, but they subsequently came back, and took possession of the Court Glueckauf lodge room and the property in controversy. On Monday following the 11th day of December, 1893, a portion of the members met at their regular meeting place and twenty-three of them signed a statement, which was sent to the grand lodge of Illinois, to the effect that they would recognize their allegiance to such high court, and requested the return of their charter, which the high chief ranger of the local court had in the meantime returned to such high court. The charter was returned to them, and from thence forward such members and the accessions to the membership have constituted the local court, and have been recognized by the high court of Illinois as Court Glueckauf No. 101.

Appellants' first proposition is that the absence of proof of any demand on the part of appellee upon ap-

pellants to give up the property in controversy must defeat a recovery. It is insisted by appellees that the evidence shows that a demand for possession was made by the deputy high chief ranger (the only officer of the lodge who did not secede) by virtue of his position representing the high court and the subordinate court. But, if the taking was unlawful, and without right, no demand was necessary, and this question is to be determined by a consideration of the merits of the controversy.

The question as to who was the owner of the property must be answered from the circumstances under which it was acquired and the laws governing the organization. It was purchased by Court Glueckauf Lodge No. 101, partly from the high court of Illinois and partly elsewhere. Not having been incorporated, appellants' learned counsel contend that the relations of its members were, in a limited sense, like those of partners, and that they were, therefore, joint owners of the property that they had acquired together; that one joint owner has as much right to the possession of the common property as another, and that, therefore, one can not maintain replevin against another. This might be true so long as one remains a member of the association. As illustrating the view of the general laws upon the rights of the parties in property accumulated by the joint efforts of the original members, where there is an absence of any agreement among the members as to a dissolution, the following quotation is made from the note of Judge Freeman in the case of *Otto* v. *Journeymen Tailors' Protective and Benevolent Union*, 75 Cal. 308, 7 Am. St. pp. 156 and 168, 17 Pac. 217. "A member of such a voluntary association as one formed for social purposes, or the facilitation of business, has undoubtedly an interest in the general assets of the association so long as he remains a mem-

ber: *In re St. James Club*, 2 De Gex, M. & G. 383, 387; 16 Jur. 1075, 1076; 13 Eng. L. and Eq. 589, 592; which is *prima facie* equal or proportionate: *McMahon* v. *Rauhr*, 47 N. Y. 67, 70; *Belton* v. *Hatch*, 109 N. Y. 593, 4 Am. St. 495; but, in the absence of any rule to the contrary, he has no severable or transmissible interest, or the right to any proportion of the assets upon ceasing to be a member, although upon dissolution a member would be entitled to share in the effects: *In re St. James' Club, McMahon* v. *Rauhr, Belton* v. *Hatch, supra; White* v. *Brownell*, 2 Daly, 329, 356; 4 Abb. Pr., N. S., 162, 191." In the same note in another connection, Judge Freeman says: "Again, the rights of different persons claiming to represent a subordinate lodge of an order are to be determined by the constitution of the grand lodge: *Chamberlain* v. *Lincoln*, 129 Mass. 70; and where the majority of the members of an incorporated benevolent lodge withdrew from the jurisdiction of the grand lodge and surrendered their charter, the minority who continued steadfast in their allegiance, and to whom the charter was again delivered, are entitled to the property of the lodge. *Altman* v. *Benz*, 27 N. J. Eq., 331; see also, *Smith* v. *Smith*, 3 Desaus, 557."

The Independent Order of Foresters is a mutual benefit society. We make the following quotations from Niblack on Mutual Benefit Societies, section 13, p. 16: "If a mutual benefit society be composed of separate bodies, whether co-ordinate or subordinate, the by-laws and rules of the society for the management of its internal affairs, and for the adjustment of the relations between its branches, constitute the law by which they should be governed. * * * The .by-laws of a mutual benefit society are binding upon it and all its members." * * * Section 137, p. 158, "The true principle is, and upon

this view the apparent discordance in the cases may be nearly reconciled, that the law allows associates to imitate the organization and methods of corporations so far as their rights between themselves are involved, and will enforce their articles of agreement (nothing illegal or unconscientious appearing) as between the parties to them." Section 151, p. 175, "Where the society is organized for purposes other than profit, there may be property belonging to it, derived from the payment of dues or fines, or consisting of the furniture of its rooms, but the possession of such property is a mere incident, and not the main purpose or object of the society. A member has no severable proprietary interest in it, and no right to any proportionable part of it, either during the continuance of his membership, or upon his withdrawal. * * * It is well settled that where members have, contrary to the constitution and government of a voluntary society to which they belonged, severed their connection therewith, they cannot invoke the aid of a court of equity to take the property of the society from those who adhere to its organization, objects and government." Section 152, p. 177, "Where certain members of Teutonia Lodge, etc., withdrew from the jurisdiction of the grand lodge of the state, surrendered their charter and formed a new lodge, adopting the same name, and other members continued steadfast in their allegiance, and the charter was duly delivered to them as the lodge, that body which continued true to its allegiance and held the charter, was, as to certain property of the original lodge, taken by the members who withdrew, adjudged to be Teutonia Lodge, etc., and, as such, to be entitled to the property of the society." Citing *Altman* v. *Benz,* 27 N. J. Eq. 331.

Any member of a sub-court is bound by contract to the high court, the sub-court and each member to be

governed by the constitution and by-laws of the order
so far as they were not in conflict with the general
laws of the land. Any member has a right to with-
draw from the order, but in doing so he forfeits all
interest in the property of the lodge. Section 2 of the
constitution, under which the property in controversy
was accumulated, provides that the High Court of the
Independent Order of Foresters of the state of Illinois
has original jurisdiction of all the courts organized
under her authority. Section 7 of the constitution pro-
vides that such "high court does hereby order, estab-
lish and promulgate this constitution and these laws
for its future government, and that of the subordinate
courts under its jurisdiction and the members
thereof." The second sub-division of section 1, article
11 of the constitution provides: "The high chief ranger
shall, by virtue of his office, have full and complete
authority over all subordinate courts, and the effects
thereof, for the enforcement of the laws of the high
court and the preservation of order in the said courts,
and may, when he deems necessary, either in person
or by deputy, take full charge of and direct the same;
suspend or remove any officer or member for cause,
demand and receive all papers, books, or effects of the
court." Section 5, article 15 provides: "And said club
shall be under the special supervision and control of
the high chief ranger, who may, for cause, withdraw
the authority here given and dissolve the club." Sec-
tion 1, article 12, provides: "The moneys of this
court are a trust fund for the benevolent purposes of
the order, and the payment and necessary and proper
expenses of the court, and shall not, under any pre-
tense, be divided up among the members, or otherwise
diverted from their legitimate use as aforesaid." Sec-
tion 2, article 12, of the constitution provides: "When-
ever a member of this court is suspended, dropped, or

expelled, for any cause, or severs his connection by withdrawal, resignation, or otherwise, his right, title, and interest in or to any of the funds or property of this court hereby becomes extinguished and lost." Any member who seceded from the local court was charged with notice that he thereby renounced all title to the property accumulated by the local court.

Appellants' learned counsel further contend that by the act of secession the membership of Court Glueckauf No. 101 was reduced to less than fifteen, and by the laws of the order the lodge thereby ceased to exist. Section 1 of article 15 of the constitution is as follows: "Fifteen members of a club duly qualified as herein specified shall be necessary to form a new court and make application for a charter." Section 1 of article 18 reads: "Whenever a court forfeits its charter and becomes dissolved in consequence of the lack of the necessary number (15) of members, each remaining member then in good standing, who has paid all assessments to date of such dissolution, and against whom no charges of any kind are pending, or preferred, who desires to continue in membership in the order, and be entitled to the benefit of the endowment, may do so by filing with the high secretary, within thirty days from the date of such dissolution, a written notification of his desire and intention to that effect, over his own signature."

These two sections are relied upon by appellants to support their claim. Looking to the entire instrument herein, material parts of which we have set out, we are of the opinion that this position is not tenable. The local lodge was operated under the grand lodge, and the grand lodge had reserved the right through its high chief ranger to demand and receive all papers, when he deemed necessary. If the Court Glueckauf No. 101 became dissolved, the right to its effects, un-

der the provisions of the constitution, vested in the supreme lodge, and it and not the defendants would be entitled to the property. The fact that the seceding members practically adopted the same name and had the same object in view, would not deprive the original lodge nor the grand lodge of any right.

We need not and do not decide that the reduction of the local lodge to a membership of less than fifteen does or does not of itself work a dissolution, but under such provision the supreme lodge would be authorized through its high chief ranger to claim the property. This right in the case before us was not exercised. The supreme lodge returned the charter and ever afterwards recognized Court Glueckauf No. 101 as the local order, and there was no legal lapse of which appellants can take advantage. Appellants, in having seceded, forfeited all right to or in any property of the lodge. The court committed no error. Judgment affirmed.