Michael Hagemann v. Wilhelmina Hagemann, Adm'x, etc.

| 90 | 251 |
| 99 | ²327 |
| 90 | ⁻251 |
| s102 | 481 |

1.  GIFTS—*Causa Mortis, Defined.*—A gift *causa mortis* must be in view of the donor's death, and made to take effect only in the event of his death by his existing disorder; there must be an actual delivery of the subject of the gift.

2.  SAME—*Inter Vivos—Essentials.*—It is essential to a gift *inter vivos* that the gift be absolute and irrevocable; that the donor part with all present and future dominion over it; that it go into effect immediately; that there be a delivery to the donee and such change of possession as to put it out of the power of the donor to repossess himself of the thing given.

3.  SAME—*Causa Mortis and Inter Vivos Distinguished.*—A gift *inter vivos* is chiefly distinguished from a gift *causa mortis* by the fact that the former is not made in view of expected or impending death, and that it is not revocable in its nature.

4. SAME—*Inter Vivos, of Choses in Action.*—If no claims of creditors intervene to affect its validity, a gift *inter vivos* of a chose in action stands on the same footing as a sale; and when such a gift is completed by a delivery, the property vests immediately and irrevocably in the donee, and the donor has no more right over it than any other person.

**Petition in Probate,** for the surrender of assets.—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded with directions. Opinion filed July 17, 1900.

F. M. BURWASH, attorney for appellant.

HERVEY H. ANDERSON, attorney for appellee.

MR. PRESIDING JUSTICE HORTON delivered the opinion of the court.

This proceeding was commenced by petition filed in the Probate Court of Cook County by the appellant. In said petition appellant asked that the promissory notes and securities now here in question or the value thereof, be turned over or paid to him by appellee. The prayer of said petition was denied by the Probate Court and appellant took an appeal to the Circuit Court. It was by said Circuit Court ordered, by agreement of parties in open court, that this cause be treated and considered as a suit in chancery. By final decree of the Circuit Court it was adjudged that the claim or petition of appellant be, and the same was thereby "dismissed out of court for want of equity or legal right."

Appellant was a brother of Fritz Hagemann, deceased, and is a laboring man without financial resources. Deceased was a contractor and had been somewhat successful financially. He was married October 25, 1878, to said administratrix, who was at that time a widow with one child. He never had any children. He did not live very happily with his wife. She commenced proceedings against him on two different occasions for divorce and one was pending at the time of his decease. The brothers continued friendly.

October 5, 1896, deceased executed a paper which was as follows, viz:

CHICAGO, October 5, 1896.

This is to certify that in consideration of one ($1.00) dollar I have this day assigned and transferred to my brother, Michael Hagemann, notes secured by trust deeds, being for the total sum of four thousand ($4,000) dollars. Said notes are to be found in an envelope or package, which is marked: "Notes owned by Michael Hagemann"—which may be found in my safety box in the Hatterman Safety Deposit Vault Co., Chicago, to which box my said brother has access.

FRITZ HAGEMANN."

That paper was written by Wm. E. Hatterman, who was the only person present, besides the two brothers, when it was written and signed. No consideration was paid therefor. After it was signed, the paper was left with Mr. Hatterman without specific instructions. Which of the brothers delivered it to him does not appear. Notes to the amount of $4,000 were selected from among those owned at the time by the deceased, and put into an envelope, separate from all other papers, and upon such envelope Mr. Hatterman wrote the words, "Notes owned by Michael Hagemann," which was signed by Fritz Hagemann. The acts of, and in the presence of, Hatterman, were contemporaneous, and together constitute one transaction. The envelope containing said notes was then put into box or safe No. 448 in the Hatterman Safety Deposit Vault. Both brothers had access to said safe.

Afterward, on the first day of March, 1897, the deceased rented another box (No. 835) in said deposit vault. Just when the last of the papers therein were removed from box 448 does not appear, but it was on or before July 6, 1897. Appellant took said envelope and contents from said box 448, May 27, 1897, or prior to that date, and took them to his own house. The wife of deceased had access to said box 835 but did not have access to said box number 448. Appellant did not have access to said box number 835. The testimony tends to establish it as a fact that a short time prior to his death said Fritz went to the house of appel-

lant and got from him the notes which had been put in said envelope, stating that there was something in there which he desired to see. Appellant retained the envelope and the notes were in the possession of Fritz at the time of his death, and came into the possession of appellee and were inventoried by her as a part of said estate.

By the arguments of counsel three questions are presented concerning the transaction between the deceased and appellant, relating to the notes which were placed in said envelope:

First. Was it a sale? We think not. There was no consideration whatever to support that theory in a chancery proceeding.

Second. Was it a gift *causa mortis?* A *donatio mortis causa* is defined by Blackstone to be a gift made by a person in sickness, or other immediate peril, who, apprehending his dissolution near, delivers, or causes to be delivered, to another, the possession of personal property to keep as his own in case of donor's decease.

The three requisites necessary to constitute a gift *causa mortis* are:

" 1. The gift must be with a view to the donor's death; (2) it must have been made to take effect only in the event of the donor's death by his existing disorder; (3) there must be an actual delivery of the subject of the donation." Telford v. Patton, 144 Ill. 611, 619.

The deceased had been sick for more than twenty years. We are not satisfied from the testimony that he gave the notes in question to appellant with a view to his death, in the sense that he regarded himself as in immediate peril. And it is certain that he did not die by his then existing disorder. The first and second requisites of a gift *causa mortis* are not established.

Third. Was it a gift *inter vivos?* The case of Telford v. Patton, *ante*, is full and very instructive upon the questions under consideration. It is there held:

" It is essential to a donation *inter vivos* that the gift be absolute and irrevocable; that the giver part with all present and future dominion over the property given; that the gift go into effect at once and not at some future time; that

there be a delivery of the thing given to the donee; that there be such a change of possession as to put it out of the power of the giver to repossess himself of the thing given."

These definitions in the Telford case are quoted with approval in Williams v. Chamberlain, 165 Ill. 210, 218. As stated in the Telford case (p. 621):

" A gift *inter vivos* is chiefly distinguished from a gift *causa mortis* by the fact that the former is not made with a view of expected or impending death, and that it is not revocable in its nature."

Fritz Hagemann intended to accomplish something when he selected notes to the amount of $4,000 and put them in an envelope and signed his name to an indorsement written upon such envelope stating that such notes were owned by appellant, and also executed the transfer dated October 5, 1896, wherein it is stated that he had assigned and transferred the notes in said envelope to appellant. That he intended to then and there give and transfer said notes and the title and possession thereof to appellant is clearly established. It then becomes a question of law whether by his acts he accomplished his purpose.

The notes inventoried as belonging to said estate were so drawn as to pass by delivery without an indorsement by deceased. Their delivery was essential to the completion of the gift. But the delivery may be constructive, as of a key, or of a part for the whole. Deceased had been lessee of said box 448 since November 23, 1894. June 23, 1896, it was arranged by deceased that appellant should "have access to and control of the contents of" said box 448. There were two keys to that box. Having access to such box necessarily implied that appellant should have a key thereto. The deceased received two keys from the vault company. Appellant went to said box 448 in the absence of deceased and must have had a key to it. He (appellant) took said envelope and contents to his house. If said envelope and the notes put therein October 5th, had been in the actual possession of appellant at his house when Fritz Hagemann died, then, considering all the other facts here shown, it would hardly have been contended otherwise than that

they belonged to him. If that conclusion be correct, then the gift became complete. Fritz Hagemann intended to give to his brother, the appellant, the notes put into said envelope, and the question is whether, by the rules of law, this intention can be carried into effect.

If no claims of creditors interfere to affect its validity, a gift *inter vivos* of a chose in action stands on the same footing as a sale.

"When such a donation is completed by delivery, the property vests immediately and irrevocably in the donee, and the donor has no more right over it than any other person." Grover v. Grover, 24 Pick. (Mass.) 261.

In this respect and during the lifetime of the donor, a gift *inter vivos* differs from a gift *causa mortis*. When the deceased went to appellant and, for some purpose not clearly apparent, got notes, the title of which had fully vested in appellant, there being no act or statement by appellant tending to show an intention on his part to transfer. the title to said notes, the title of appellant is not thereby destroyed or impaired.

There is, however, a practical difficulty met at this point: that is, as to the identity of the notes put into said envelope. As to this there is no finding by the trial court. The judgment of the trial court will be reversed and the cause remanded with directions to ascertain as nearly as practicable, and determine what notes came into possession of appellant which were in said envelope, and which deceased obtained from appellant as stated, and to decree that such notes or the proceeds of such of them as have been paid, if any, be delivered and paid to appellant. Reversed and remanded with directions.