## Teague, Administrator, *v.* Abbot.

[No. 7,745.    Filed December 13, 1912.]

1. GIFTS.—*Delivery.*—*Sufficiency of Evidence.*—In a suit against an administrator to replevy certain bank stock alleged to have been given to plaintiff by the intestate, evidence showing that the intestate was confined during his sickness at the home of plaintiff's stepfather, that for some months prior to his death the plaintiff, a girl of seventeen years, waited upon the intestate, took care of his room, assisted in preparing his meals and prepared and disposed of the various articles used in his care and treatment, that he had great confidence in plaintiff, taught her the combination to his safe and relied upon her to assist him in his business transactions, that a few days before his death he insisted on compensating her and told her she could have the bank stock and requested her not to sell it, that, at the time, the stock was in intestate's safe in a house a quarter of a mile away, that after telling plaintiff she could have the stock, intestate wrote to defendant concerning the disposition of his property and made mention of plaintiff and the stock, is sufficient to sustain a finding that the intestate gave the stock to plaintiff, not as a mere gratuity, but in return for valuable services rendered to him. pp. 606, 608.

2. APPEAL. — *Review.* — *Findings.* — *Judgment.* — *Conclusiveness.*—Where there is evidence tending to support the finding and judgment of the trial court, the same will not be disturbed on appeal, although such evidence may justify other inferences that seem more reasonable and probable than those drawn by the trial court. pp. 608, 609.

3. GIFTS.—*Delivery.*—*Constructive Delivery.*—A delivery of personal property as a gift may be either actual or constructive. p. 609.

4. GIFTS.—*Inter Vivos.*—*Causa Mortis.*—Gifts *inter vivos* and *causa mortis* each require an unconditional delivery in the lifetime of the donor, the main distinction being that the survival of the donor defeats a gift *causa mortis.* p. 610.

5. GIFTS.—*Inter Vivos.*—*Delivery.*—*Acceptance.*—The unconditional delivery of property as a gift *inter vivos*, though merely constructive, and its acceptance during the lifetime of the donor, vests the title irrevocably in the donee from the date of such delivery. p. 611.

6. GIFTS.—*Bank Stock.*—*Satisfaction of Debt.*—*Sales.*—A gift, in the form of a verbal transfer of bank stock in settlement of an obligation due the donee, and the acceptance thereof in payment

of such claim, involves the essential elements of a sale, and immediately and irrevocably vests the title to such stock in the donee. p. 611.

7. CORPORATIONS.—*Stock.*—*Equitable Assignment.*—A verbal transfer of bank stock made by a decedent, shortly before death, in satisfaction of a claim for services rendered to him, where delivery is merely constructive, amounts to an equitable assignment making the claimant the actual owner of such stock from date of the transaction. p. 613.

8. REPLEVIN.—*Demand.*—*Necessity.*—The demand, otherwise required before bringing a replevin suit in certain cases, need not be made, where the claim of the plaintiff is wholly repudiated and refused recognition. p. 613.

9. REPLEVIN.—*Demand.*—*Necessity.*—Where a decedent had given and contructively delivered bank stock to plaintiff in satisfaction of services, decedent's administrator had no right of possession of such stock, and his possession being wrongful from the beginning, no demand therefor was necessary before bringing a suit to replevy same. p. 614.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Lydia Abbot, by her next friend, Willard Teague, against Millard S. Teague, administrator of the estate of Jefferson Teague, deceased. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Samuel E. Dillon* and *Richard M. Milburn,* for appellant. *E. P. Richardson* and *A. H. Taylor,* for appellee.

FELT, J.—This was an action in replevin brought by appellee, by her next friend, against appellant, as administrator of the estate of Jefferson Teague, deceased, for the possession of certain bank stock alleged to be the property of appellee. The cause was tried by the court, without the intervention of a jury, and from a finding and judgment in favor of appellee this appeal is taken.

The only error assigned is that the court erred in overruling appellant's motion for a new trial, asked on two grounds: The decision of the court is not sustained by sufficient evidence and is contrary to law.

It is not disputed that appellee rendered services of some value, and that it was the intention of decedent to make

some provision for her in return for such services. Appellee claims that decedent carried out such intention by an executed gift to her of a certificate for five shares of the capital stock of the Otwell State Bank, at Otwell, Indiana. Appellant concedes that decedent in his lifetime expressed an intention to give said stock to appellee, but contends (1) that such gift was never in fact executed, and (2) that no demand was ever made on appellant as administrator for said stock certificate, and that this action must therefore fail.

The evidence, in substance, shows that Jefferson Teague died intestate on May 29, 1909, leaving as his only heirs at law a sister, Mattie Patton, and two brothers, Willard and Millard S. Teague; that he left an estate, real and personal, of about $11,000, of which appellant was duly appointed administrator on June 3, 1909; that for four or five years prior to his death decedent made his home with his brother, Willard Teague, and was there most of the time; that he had tuberculosis and was confined to his bed much of the time during the last six months of his life; that appellee is the step-daughter of Willard Teague, and lived in the home of her step-father during all of said time, and was, at the time of decedent's death, seventeen years of age; that for some months prior to his decease, appellee waited on Jefferson Teague, took care of his room, assisted in the preparation of his meals, and prepared and disposed of the various articles used in his care and treatment; that he had great confidence in her, had taught her the combination to his safe, and relied on her to assist him in his business transactions. There is also evidence tending to prove that about a week or ten days before his death decedent asked appellee what she wanted for waiting on him; that she told him she did not want anything; that he insisted on compensating her, and she said "whatever you give me will be all right"; that he spoke of giving her either a residence known as "the home place", or said bank stock, and

after talking it over he told her she could have the bank stock, and requested her never to sell it, and she thereupon promised him she would not sell the stock; that decedent owned a farm, on which there was a house, situate about a quarter of a mile from where he was then living; that he had reserved a room in said house in which he kept his library, a fireproof safe and some furniture; that he kept his notes and other valuable papers in said safe; that immediately after the conversation in which decedent told appellee she could have the bank stock he wrote a letter to appellant on the subject of the disposition of his property; that this letter was lost or misplaced, and was not produced at the trial; that appellant admitted there was something said in the letter about appellee and the bank stock, but said decedent asked his advice about giving it to appellee, and later in a conversation expressed a different intention; that he told his brother he himself had better do with his property what he wanted done, for he (appellant) probably could not do so after his death; that on the day after the funeral, and a day or so before appellant's appointment as administrator, appellee asked appellant to give her the bank stock, just what Jeff (decedent) told him she should have, and appellant said he would not do so, that she had earned $1,000, but did not get it; that he thereupon demanded of her the stock, and she said she did not have it, but notwithstanding her answer he believed she had the stock, and made no further demand on her for it; that in December, after the suit was brought in November, appellant informed appellee that he did not intend she should have the bank stock. The evidence also tends to show that decedent and appellant, his brother, formerly owned said safe in partnership, but that some time prior to his death decedent purchased his brother's interest; that appellee turned over to appellant the other notes and papers of the decedent, and he did not obtain the certificate of bank stock for about two months thereafter, when the same was found under a book case in

decedent's own house by a relative of appellant who turned it over to him.

Appellant insists that there is no evidence from which the trial court could rightfully find that decedent delivered the stock to appellee, or that she made any demand on appellant therefor before the institution of this suit. If there is any evidence tending to support the finding and judgment of the trial court, this court, under well-established rules, will not disturb the conclusions so reached. The trial court had the right to draw any inferences that may reasonably be drawn from the facts proven, and it is. not the province of this court to question such conclusions, because other and different inferences may seem more reasonable and probable than those drawn by the trial court. The evidence warrants the inference that decedent recognized an obligation resting on him to compensate appellee; that he gave her the stock in question not as a mere gratuity, but in return for valuable services rendered him; that the stock was in the safe when he transferred it to appellee in payment for her services; that decedent at that time had the present intention of parting with all control over the certificate. There is no dispute about the fact that decedent had taught appellee the combination to his safe where his valuable papers were kept, and that she knew it. at that time. The fact that the stock was not found in the safe after decedent's death is not conclusive on the proposition that it was not there at the time decedent transferred it to appellee. In handling the papers it may have been unintentionally removed, and in the same way may have gotten into the place where it was found more than two months later. There is no explanation as to when or how the stock got out of the safe, or into the place where it was found. It was found in a place where decedent was not likely to have intentionally placed, or kept it. There is evidence warranting the inference that the stock was in the safe when it was transferred

to appellee, and the mystery surrounding its location for two months after decedent's death does not make such inference unreasonable or impossible. Appellee's knowledge of the combination to the safe, and her control over decedent's papers, gave her all necessary means of acquiring actual manual possession of the stock, and rendered unnecessary any further handing over of the certificate. There is no doubt that decedent intended thereby to transfer to appellee the bank stock in payment for the services she had rendered him, and in satisfaction of the obligation he recognized as resting on him; that she then and there accepted the same, and both believed and intended she should then and there become the absolute and unconditional owner thereof. This was about a week or ten days before decedent's death, and he was then confined to his bed. Appellee was but a child, and engaged in caring for the sick. The facts that the stock was not in decedent's immediate control, and that appellee did not then obtain the actual manual possession of the certificate, in view of the other facts proven and the condition and situation of the parties, by no means debarred the trial court from inferring the ultimate fact of delivery. There was some evidence warranting such finding.

The inference having been drawn, the facts found and a correct result reached, this court will not reverse the judgment because a different inference might be drawn

2. from the same facts by another person. In legal contemplation, the delivery was in fact made to appellee by decedent without reservation, and she was thereafter the absolute owner of the stock, since such delivery

3. may be either actual or constructive. *Goelz* v. *People's Sav. Bank* (1903), 31 Ind. App. 67, 67 N. E. 232; *Martin* v. *McCullough* (1894), 136 Ind. 331, 338, 34 N. E. 219; *Devol* v. *Dye* (1890), 123 Ind. 321, 324, 24 N. E. 246, 7 L. R. A. 439; *Caylor* v. *Caylor's Estate* (1899), 22 Ind. App. 666, 670, 52 N. E. 465, 72 Am. St. 331; *Wyble* v. *Mc*

*Pheters* (1876), 52 Ind. 393; *Gammon Theological Seminary* v. *Robbins* (1891), 128 Ind. 85, 89, 27 N. E. 341, 12 L. R. A. 506; *Debinson* v. *Emmons* (1893), 158 Mass. 592, 33 N. E. 706; *Phinney* v. *State, ex rel.* (1904), 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119; *Hagemann* v. *Hagemann* (1899), 90 Ill. App. 251; *Thomas' Admr.* v. *Lewis* (1892), 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. 848; *Coleman* v. *Parker* (1873), 114 Mass. 30, 32; 20 Cyc. 1199.

The main distinction between gifts *inter vivos* and gifts *causa mortis* is found in the fact that the former requires an unconditional delivery in the lifetime of the donor, and the latter the same, subject only to the one condition that the survival of the donor defeats the gift. The question of delivery is therefore essentially the same in each instance.

In *Devol* v. *Dye, supra,* 327, it is said: "The rule requiring delivery, either actual or symbolical, must be maintained; but its application is to be mitigated and applied according to the situation of the subject of the gift, and the condition of the donor. The intention of a donor, in peril of death, when clearly ascertained and fairly consummated, within the meaning of well-established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery. The rule which requires delivery of the subject of the gift is not to be enforced arbitrarily. *Stephenson* v. *King* [1883], 81 Ky. 425, 50 Am. Rep. 173."

In *Thomas' Admr.* v. *Lewis, supra,* the Supreme Court of Virginia said, on page 62: "Delivery is essential; it may be either actual, by manual tradition of the subject of the gift, or constructive, by delivery of the means of obtaining possession. Constructive delivery is always sufficient when actual, manual delivery is either impracticable or inconvenient."

In Thornton, Gifts and Advancements, §148, it is said: "If the language used by the donor is clear and unambig-

Teague *v.* Abbot—51 Ind. App. 604.

uous, showing a clear intent to make the gift and a belief on his part that he had done all that was necessary to complete it, then the act of delivery if slight and ambiguous will be aided thereby, not, however, dispensing with an actual delivery; but rendering the gift valid where it would be deemed invalid if the acts of delivery were uncertain or ambiguous. So if there is a clear act of delivery, accompanied by words of a gift of a somewhat doubtful import, the act of delivery may be resorted to, to determine the intent the alleged donor had in his mind when he made the delivery and used the language attributed to him. Or, in other words, a good delivery may aid doubtful words of gift; and unambiguous acts of delivery may be aided by clear words of gift.'' In view of the foregoing authority, the trial court did not err in holding that the facts of this case are sufficient to meet the requirements of the law on the subject of delivery.

There is another ground on which the decision of the lower court can be sustained. We have here no question of the rights of creditors or third parties. If the transaction be considered as a gift *inter vivos,* and the stock was delivered to and accepted by appellee in the lifetime of the decedent, though such delivery was symbolic or constructive only, from the date of such transaction the title vested irrevocably in the donee, and the donor thereafter had no more right to nor control over the stock certificate than any other person. If the transaction be viewed from the standpoint of the satisfaction of appellee's claim against decedent for services, his verbal transfer to her of the bank stock, in settlement of his obligation and her acceptance thereof in payment of any and all claims against him, immediately and irrevocably passed to appellee title to the bank stock, for such transaction involves all the essential elements of a sale of personal property.

In *Driscoll* v. *Driscoll* (1904), 143 Cal. 528, 533, 77 Pac. 471, 473, the court said: ''The chief ground upon which

the appellant seems to rely for a reversal of the judgment is, that there was no delivery of the property to the defendant during the lifetime of her father. A sale of personal property is, however, good as between the parties whether the possession be delivered or not. Want of delivery renders it void only as to creditors and subsequent purchasers." See, also, Benjamin, Sales (6th ed.) §308.

In *Hagemann* v. *Hagemann, supra*, 256, the court said: "If no claims of creditors interfere to affect its validity, a gift *inter vivos* of a chose in action stands on the same footing as a sale."

In *Grover* v. *Grover* (1839), 24 Pick. (Mass.) 261, 263, 35 Am. Dec. 319, the court said: "It is objected, that no valid gift of a chose in action can be made *inter vivos*, without writing, and this objection would be well maintained, if a legal transfer of a chose in action were essential to give effect to a gift. But as a good and effectual equitable assignment of a chose in action may be made by parol, and as courts of law take notice of and give effect to such assignments, there seems to be no good foundation for this objection. It is true that the cases, which are numerous, in which such equitable assignments have been supported, are founded on assignments for a valuable consideration; but there is little, if any, distinction in this respect, between contracts and gifts *inter vivos;* the latter indeed, when made perfect by delivery of the things given, are executed contracts. 2 Kent's Comm. (3d ed.) 438. By delivery and acceptance the title passes, the gift becomes perfect, and is irrevocable. There is, therefore, no good reason why property thus acquired should not be protected as fully and effectually as property acquired by purchase. And so we think that a gift of a chose in action, provided no claims of creditors interfere to affect its validity, ought to stand on the same footing as a sale." To the same effect is the case of *Basket* v. *Hassell* (1882), 107 U. S. 602, 611, 2 Sup. Ct. 415, 27 L. Ed. 500.

The facts of this case warrant the inference of a sale by

decedent to appellee of the bank stock, in consideration of the satisfaction by her of her claim for services rendered to him. This amounted to an equitable assignment of the stock to appellee and made her the actual owner thereof from the date of the transaction.

On the question of the demand, the proof tends to show that appellee had possession of the notes and papers of decedent, and turned them over to appellant early in June; that the stock in question was not with the rest of the papers but was found by a relative of appellant, and turned over to him about August 12; that appellee demanded of appellant possession of the stock a day or two before his appointment as administrator, and he did not refuse to grant her request on the ground that he was not then the administrator, but told her he would not let her have it. Shortly after the suit was begun, he again told her she could not have the stock.

This evidence is insufficient to show a demand on appellant for the stock after his appointment and before the bringing of the suit, but it does show that any demand would have been unavailing and a wholly useless formality. All the parties from the beginning of the transaction acted on the theory that appellant was to be the administrator. At every opportunity he refused to recognize appellee's ownership or right to the possession of the stock.

When the claim of the one who should otherwise make the demand is wholly repudiated and refused recognition, the demand would be a useless formality, and it is held that where it would be clearly unavailing it need not be made. 34 Cyc. 1410, subd. (h) ; *Ferguson* v. *Hull* (1894), 136 Ind. 339, 348, 36 N. E. 254; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 120, 32 N. E. 319, 20 L. R. A. 400; *Booth* v. *Fitzer* (1882), 82 Ind. 66.

There is also another reason why a demand was unnecessary. The court found from the evidence that appellee became the absolute owner of the certificate of stock in the life-

time of decedent. After the stock became the property of appellee in settlement of the obligation recognized by decedent, he himself had neither title to, nor the right of possession of the stock, and his administrator could not, therefore, acquire a right he did not possess. Appellant's possession was therefore wrongful from the beginning, and no demand for the stock was necessary before bringing this suit to obtain possession of the certificate. *Jones* v. *Smith* (1890), 123 Ind. 585, 24 N. E. 368; *Deeter* v. *Sellers* (1885), 102 Ind. 458, 1 N. E. 854; *Cox* v. *Albert* (1881), 78 Ind. 241; *Rose* v. *Cash* (1877), 58 Ind. 278, 281; *Lewis* v. *Masters* (1846), 8 Blackf. 244; *Ahlendorf* v. *Barkous* (1898), 20 Ind. App. 657, 50 N. E. 887.

No error was committed in overruling appellant's motion for a new trial.

Judgment affirmed.

Ibach, C. J., Hottel, Myers, Lairy and Adams, JJ., concur.

NOTE.—Reported in 100 N. E. 27. See, also, under (1) 20 Cyc. 1223; (2) 3 Cyc. 360; (4) 20 Cyc. 1195, 1230, 1231; 99 Am. St. 890; 29 L. R. A. (N. S.) 166; (5) 20 Cyc. 1209; (6) 20 Cyc. 1212; (7) 10 Cyc. 598, 599; (9) 34 Cyc. 1406. As to when replevin is sustainable, see 80 Am. St. 741.