JOHN H. GOULD, Executor, Appellant, v. GUY E. LOGAN et al.,
Appellees.

GIFTS: Delivery—Sufficiency of Evidence. The delivery of a gift of
1   corporate stock is sufficiently shown by testimony (1) that the
    donor undoubtedly intended to make such gift; (2) that the donees
    were intimate associates of the donor's, who was a widower; (3)
    that the donor placed his several intended gifts in separate en-
    velopes, and indorsed on each a statement to the effect that the
    envelope should be delivered by his executors to a named donee;
    (4) that, in a private writing, the donor directed his executors to
    make such delivery; (5) that the donor intrusted said envelopes
    and contents to the custody of a certain person, to hold until the
    donor died; (6) that said intended gifts comprised practically all
    of donor's personal property, and that his subsequently executed
    will contained a statement that he had already disposed of most
    of his personal property; and (7) that, subsequent to all of said
    acts, the donor repeatedly, in private conversations, confirmed said
    acts.

WITNESSES: Competency—Transaction with Deceased—Delivery of
2   Gift. A donee may not, in an action by an executor to set aside an
    alleged transfer of corporate stock, testify that executor's deceased
    delivered said stock to him as a gift.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

NOVEMBER 11, 1924.

ACTION in equity, to set aside an alleged transfer of cer-
tain shares of capital stock, as not being a completed gift. The
trial court sustained the gift, and the plaintiff appeals.—
*Affirmed.*

*George E. Brammer* and *Nourse & Nourse,* for appellant.

*Stipp, Perry, Bannister & Starzinger* and *Charles S. Brad-
shaw,* for appellees.

FAVILLE, J.—G. D. Ellyson, who died August 7, 1922, was,
for a number of years prior to his death, the president of the

Standard Chemical Company, of Des Moines, and owned 3,444
shares of the stock of the said company. On
June 10, 1921, Ellyson attempted to make a
gift of his stock in the chemical company to
appellees. Appellant, as executor of the estate of Ellyson, con-
tends that the transaction in question did not constitute a com-
pleted gift, but that the shares of stock belonged to the decedent
at the time of his death, and were subject to distribution under
his will, by the executor thereof.

1. GIFTS: de-
livery: sufficiency
of evidence.

The case presents a fact question, largely. It appears that
Ellyson was a widower, and that appellee Miss Redmond had
been his confidential stenographer for many years, and that he
recognized her as a faithful and efficient employee. Appellees
Mallett and Logan were associated with him in the operation
of the chemical company, and enjoyed his confidence and his
friendship, as well. Appellee Katharine Gould was the daugh-
ter of the wife of Ellyson by a former marriage, and appellant
is her husband. Mrs. Gould is the mother of three children.

It appears that the chemical company was a successful con-
cern, and that Ellyson drew a substantial salary as president of
the company. He had formerly been engaged in the banking
business in Des Moines. The particular transaction in regard to
the gift occurred on June 10, 1921. It appears that, under date
of June 8, 1921, Ellyson took all of the shares of stock which
he owned in the Standard Chemical Company, which were evi-
denced by twenty-two certificates, and indorsed each of these
certificates in lead pencil, by assigning them in different blocks
to appellees Logan, Mallett, Redmond, and Katharine Gould,
inserting in the assignment on each of said certificates the date
of June 8, 1921, and the name of the respective party to whom
it was assigned, and signed his name thereto in lead pencil.
Six hundred shares were assigned to Mrs. Gould in trust for her
three children.

It appears that, on June 10, 1921, there was a transaction
in Ellyson's office with regard to the manual delivery of the
certificates in question to the various parties, but they are in-

competent to testify in regard thereto, under the provisions of Code Section 4604 (Section 11257, Code of 1924). There is, however, competent evidence of the fact that, at the time, Ellyson had certain certificates of stock that were placed in different piles and were in the presence of appellees.

2. WITNESSES: competency: transaction with deceased: delivery of gift.

On the same day on which it is claimed the shares of stock were turned over to appellees, Ellyson made his will, and therein recited:

"Having prior to my death disposed of most of my personal property, it is my will that my executors and the administrators of this will dispose of any real estate of which I may die possessed at such times and prices as they may agree upon as being advisable."

It appears from the evidence that his shares of stock in the Standard Chemical Company comprised the bulk of personal property of which he was possessed.

The shares of stock so assigned by decedent to each of appellees were placed in a separate envelope by Ellyson, which envelopes were sealed, and, together with his will, were inclosed in a larger envelope. On that day he wrote the following letter:

"Des Moines, Iowa. June 10, 1921.
"To the Administrators of my Estate,

"Gentlemen: Herewith please find my will of which you are named as executor, also a number of envelopes addressed to persons well known to you which please deliver and follow any instructions named in any of these letters when presented to you.

"Also please see that Grace Redmond receives my set of silver goblets and two statues to be selected by her.

"Please see that Mrs. Grace Logan receives my silver sherbet cups together with two statues to be selected by her.

"These instructions are independent of the will and having implicit confidence in your carrying out my instructions, felt it unnecessary to include these two small items in the will.

"Please accept this as my final request and an expression of sincere appreciation of our past pleasant association.

"Cordially yours, G. D. Ellyson."

It appears that, on June 10th, Ellyson gave all of the certificates in question, and the various envelopes in which they were inclosed, to Miss Redmond, who put the same in the safe in Ellyson's office, where they remained until after his death. She had the combination and keys to the safe, and it appears that no one else ever opened the safe or had this combination. After Ellyson's death, the parties met in his office, and Miss Redmond unlocked the safe with a key which she took from her hand-bag, and turned over to each of the parties the envelopes referred to. Upon one of the envelopes was the indorsement: "This envelope is to be delivered by the executors of my will to Guy E. Logan." The other envelopes contained an identical indorsement, except as to the names of the different appellees. The shares of stock were in these envelopes.

Ellyson attended various meetings of the Standard Chemical Company after June 10, 1921, and continued to draw his salary as president of such company, and participated in the affairs of the company at meetings of the board of directors. At one time he drew a salary of $2,000 per month, which he voluntarily reduced to $1,500, and finally to $1,000 a month.

Appellee Mallett had been associated with him for some time in connection with the company, and had charge of the scientific work connected with the chemical company; and the undisputed evidence shows that he was held in high regard by Ellyson. Appellee Logan had been at one time adjutant general of the state of Iowa, and had gone into the company at the solicitation of Ellyson, and the parties were on very intimate terms.

The sole question for us to determine is whether or not there was such a completed gift as carried the title of the shares of stock to the respective donees. It is unnecessary that we set out all of the details of the evidence, but we limit ourselves to our ultimate conclusion.

As before stated, appellees are incompetent to testify with regard to the transaction with them; but aside from that, we find in the record sufficient evidence to sustain the transaction as a completed gift. There is evidence of an expressed intent on the part of the donor to make a disposition of his stock in the

chemical company to the parties named. This evidence comes from various persons, and under a variety of circumstances which it is not necessary for us to set out; but it is quite apparent from the record that it was the repeated expression of the donor, Ellyson, that he intended to make disposition of these shares of stock to the parties to whom he made the assignments. There is, in addition to this, the fact that the assignments were made in his own handwriting, duly signed by him, and that the donees were duly designated, and that, after the stock had been so assigned, it was turned over to Miss Redmond for the purpose of being kept by her in a safe to which she had the combination, and, as we understand the record, of which she had the sole control.

It further appears from the evidence that, in making his will, on June 10, 1921, the decedent stated that he had disposed of most of his personal property; and this statement could not well have had reference to anything except the shares of stock in the chemical company. There is substantial and undisputed evidence to the effect that, after the transaction of June 10, 1921, at various times and to different parties the donor declared, in effect, that he had transferred all of his stock, naming the parties to whom he had made the transfer, and said that he had reserved the voting power on the stock. He also stated to one party the details of the transaction, to the effect that he had brought the appellees Mallett and Logan and Miss Redmond into his office, handed them the stock, and told them that the success of the business was entirely in their hands; and other matters. He stated that he did not own stock in the company, and that he had disposed of it all to the parties named.

We have not attempted to review all of the evidence in regard to the matter; but we have examined the same with care, and are satisfied therefrom that there is sufficient competent evidence in the record to establish beyond any fair question that the donor, during his lifetime, made a manual delivery of the several certificates of stock to the donees named, and vested in them the title to the same, even though he retained certain proprietary rights during his lifetime. The rules of law governing gifts *inter vivos* are of ancient origin, and have been fre-

quently recognized under a great variety of circumstances. No two cases are exactly alike in their facts. We are constrained in this case to concur in the conclusion of the trial court that there is sufficient competent evidence in the record to establish the fact of a completed gift, and that the title to the respective certificates of stock vested in the donees, and that appellant's petition was properly dismissed. As bearing somewhat on the questions of law involved, see *Tucker v. Tucker,* 138 Iowa 344; *McKemey v. Ketchum,* 188 Iowa 1081; *In re Estate of La Grange,* 191 Iowa 129; *Mathers v. Sewell,* 193 Iowa 35; *Teague v. Abbot,* 51 Ind. App. 604 (100 N. E. 27).

The decree of the district court is—*Affirmed.*

ARTHUR, C. J., and EVANS and PRESTON, JJ., concur.