GAYNOR, J.  The findings of fact sufficed to support the legal conclusion of larceny under the law of this state.  Section 528 of our Penal Code makes it larceny for an agent or servant to appropriate to his own use any money or property which he has in his possession as such agent or servant, "with intent to deprive or defraud the true owner of his property or of the use or benefit thereof."  Section 548 provides that it is a sufficient defence that the "property" was "appropriated openly and avowedly under a claim of title preferred in good faith, even though such claim is untenable."  But the referee found on sufficient evidence that the appropriation in this case was in bad faith.  Moreover, such appropriation did not come under this latter provision.  The money was not appropriated under a claim of title, but under a claim of indebtedness by the plaintiff to the agent; and it is provided by the last sentence of this same section, that the said section "shall not excuse the retention of the property of another to offset or pay demands held against him."

The claim that the  question of larceny should be determined under the laws of Connecticut, where the money was collected and misappropriated, is not tenable, the contract of insurance having been made and delivered in this state to the plaintiff, a resident thereof.  The contract was not a roving one but intended the laws of this state. Grand v. Livingston, 4 App. Div. 589, 38 N. Y. Supp. 490; Id., 158 N. Y. 688, 53 N. E. 1125; Fidelity Co. v. Wells, 49 App. Div. 171, 62 N. Y. Supp. 1066; Stumpf v. Hallahan, 101 App. Div. 383, 91 N. Y. Supp. 1062; Monroe v. Douglass, 5 N. Y. 448; Union Bank v. Chapman, 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614.

The plaintiff complied with the condition precedent of furnishing particulars and proofs of loss.

The judgment should be affirmed.

Judgment affirmed, with costs.  All concur, except RICH, J., not voting.

---

### In re DUFFY.

(Supreme Court, Appellate Division, Second Department.  June 12, 1908.)

1. TRUSTS—EXPRESS TRUSTS—DEPOSITS IN SAVINGS BANKS—TERMINATION.

Money was deposited in a savings bank in the name of the depositor, in trust for a third person.  The third person died before the depositor. *Held*, that the tentative trust for the third person died with her, unless there was some unequivocal act or declaration of the depositor indicating an intention to make the trust irrevocable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 44.]

2. GIFTS—GIFT CAUSA MORTIS—DELIVERY.

Delivery is essential to a gift causa mortis, though mere possession of the thing alleged  to have been given does not establish the gift.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 123, 135–138.]

3. SAME.

Money was deposited in a savings bank in the name of the depositor in trust for a third person.  The third person died before the depositor.  After the death of the depositor, the sole heir of the third person had pos-

session of the bank book and claimed that she had obtained it from the effects of the third person. *Held* not to establish a gift, though posses- session of the bank book by the third person might create the presump- tion of a delivery to her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 135– 138.]

4. COURTS—SURROGATES' COURTS—JURISDICTION.
A Surrogate's Court has no jurisdiction to determine the validity of a debt against a third person.

5. APPEAL AND ERROR—DISPOSITION OF CAUSE ON APPEAL.
While the appellate court should strive to modify and affirm that a trial de novo may be saved, yet where the questions presented may be disposed of by the trial court in a few hearings, and the decree entered by the trial court cannot stand in important particulars, the appellate court will order a rehearing, instead of passing on the various items in dispute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4597–4599.]

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the accounting of Eliza- beth M. Duffy, administratrix of Louisa Moran, deceased. From a decree of the Surrogate's Court, and from an order denying a motion to resettle the decree, Elizabeth M. Duffy, individually and as admin- istratrix, appeals. Reversed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAY- NOR, JJ.

Paul Bonynge, for appellant.
John C. Judge, for respondent.

JENKS, J. The schedule of assets in the administrator's account recites:

"In addition to the foregoing conceded assets there is the following: On deposit in the Dime Savings Bank of Brooklyn to the credit of Bank Book No. 195755, $2,000.00, and accrued interest on the same to date. This bank book is entitled 'Dime Savings Bank in account with Louisa Moran in trust for Mary F. Moran.' The estate of decedent claims the ownership of this book and the moneys represented thereby. One Josephine McDermott also claims to be the owner of the same by virtue of an alleged gift causa mortis. The bank book is now in possession of said Josephine McDermott, but the claims of the respective parties to the same have not yet been finally adjudged."

At the close of the testimony, the learned surrogate in an elaborate opinion decided that the said $2,000 was not a part of the estate, and should not be included in the account as a surcharge. The decree or- ders that it be paid to the legal representatives of the estate of Mary F. Moran. Mrs. McDermott was the daughter of Mrs. Mary F. Moran, whom I shall call Mrs. Moran. The learned surrogate in his opinion says that Mrs. McDermott was the only next of kin and heir at law; but that statement is hardly justified by the evidence. The conclusion that the estate of Mary F. Moran owns the deposit is de- duced from the possession of the bank book by her daughter, Mrs. McDermott, her sole heir at law and next of kin, proof that in an- other proceeding Mrs. McDermott failed to establish a gift causa mortis of the book from the depositor, and the presumption that the

possession by Mrs. McDermott is lawful. My respect for the ability and acuteness of the learned surrogate has led me to consider this conclusion carefully; but I think that it is not legally sustainable. As Mrs. Moran died before the depositor, the tentative 'trust for her died with her, unless there was some unequivocal act or declaration of the depositor indicating her intention to make that trust absolute and irrevocable. Matter of Bulwinkle, 107 App. Div. 331, 95 N. Y. Supp. 176, and cases cited; Garvey v. Clifford, 114 App. Div. 193, 99 N. Y. Supp. 555. The possession, then, of Mrs. McDermott under the conditions described, must establish the unequivocal act by the depositor towards Mrs. McDermott within the rule of the Matter of Totten, 179 N. Y. 112, 126, 71 N. E. 748, 70 L. R. A. 711. But the possession of Mrs. McDermott does not in my opinion establish that she obtained the book from the effects of Mrs. Moran. Mrs. Mc-Dermott asserted her property in the book by gift causa mortis. It does not appear why she failed to establish a gift. Delivery is essential to such a gift, and yet mere possession of the thing does not establish the gift. Hence, while her assertion of the gift would naturally involve her possession of the book, possession thereof would not establish the gift. She might then have gained possession from the alleged donor. But, in any event, the conclusion that Mrs. McDermott obtained the possession from the effects of Mrs. Moran is avowedly put upon a presumption. Conceding all, we have but the fact that Mrs. Moran died in possession of the book. It is true that from Mrs. Moran's possession the presumption of delivery to her might arise. Sawyer v. Warner, 15 Barb. 282, cited in Abbott's Trial Evidence, 498. But we have as the result that the possession of Mrs. McDermott rests upon the presumption that she obtained the book from Mrs. Moran's effects, and the possession of Mrs. Moran gives rise to the presumption that there was a delivery of the book to her by the depositor. Thus presumption is piled on presumption. "Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible." United States v. Ross, 92 U. S. 283, 23 L. Ed. 707; Manning v. Insurance Co., 100 U. S. 698, 25 L. Ed. 761; O'Gara v. Eisenlohr, 38 N. Y. 296. In Rawley v. Brown, 71 N. Y. 89, it is said:

"Possession of property alone and without explanation is evidence of ownership; but it is the lowest species of evidence. It is merely presumptive, and liable to be overcome by any evidence showing the character of the possession, and that it is not necessarily as owner."

Indeed, the learned surrogate commented upon the sparsity of the proof, and suggested that there might naturally be other evidence. We need not consider this question on the supposition that all available evidence was before the court, and that a rehearing would be but repetition; for I think that the absence of other evidence was due to the fact that this question was not directly litigated. The hearing proceeded as upon the ordinary objections to an accounting until a further hearing was had on the objections of the special guardian which were aimed at the inaction of the administrator in not instituting proper proceedings to determine the ownership of this deposit.

Consequently the evidence adduced bore directly upon her conduct, and the facts marshaled by the learned surrogate upon the ownership· of the deposit were incidentally developed. Indeed, it does not appear that the estate of Mrs. Moran was represented in this proceeding. I think, then, that the decree in this respect should be reversed. Point is made that the surrogate has no jurisdiction of the matter, inasmuch as it represents a claim for a debt against a third person. It is true that a Surrogate's Court has no jurisdiction to determine the validity of such a debt. Van Valkenburg v. Lasher, 53 Hun, 594, 6 N. Y. Supp. 775, and cases cited; Meeks v. Meeks, 122 App. Div. 461, 106 N. Y. Supp. 907. On the other hand, I am not at all prepared to say that the surrogate upon an accounting has not jurisdiction to determine a question of the creation of such a trust when the question arises and all interested are parties to the proceeding. Heaton on Surrogates' Courts, § 1051, and authorities cited. The matter may be committed to the learned surrogate for his consideration. Various other objections are made to the decree, and some are of merit. It seems that the administrator acted as if she was making an intermediate account, and that the original citation so ran, but that thereafter a proceeding for the provisional settlement of her intermediate account and the proceeding for the compulsory accounting were by order of the surrogate consolidated.

While it is the duty of an appellate court to strive to modify and to affirm, to the end that the labor and expense of a trial de novo may be saved, yet there is no cogent reason in a case like this, where the questions presented may be readily disposed of by the learned surrogate in a few hearings and where the decree cannot stand in important particulars, why the court should not order a rehearing, rather than sift out and pass upon the various items of the account as if its primary function was to hold an accounting rather than to review.

I advise a reversal of the decree, with costs to the appellant. All concur.