## TRUST IN BANK DEPOSIT ESTABLISHED BY PAROL.

Superior Court of Cincinnati.

### Louis P. Herrmann v. The Brighton German Bank Company et al.

Decided, March, 1914.

*Gifts—Voluntary, Irrevocable Trust Established in Bank Deposit— Where Transfer of Title had Failed as a Gift Inter Vivos—Intention to Create a Trust—Word "for" Construed as Equivalent to "Trustee for"—Notice to Beneficiary Unnecessary.*

1. A trust in a fund deposited in bank may be established by parol.
2. Failure to establish by clear and unequivocal testimony an effective transfer of the legal title to a fund, operating as an executed gift *inter vivos*, does not preclude the donee from showing and enforcing a perfected, valid trust.
3. Where B deposited a sum of money in bank in the name of "B for H," stating at the time to the cashier of the bank that she desired to make the deposit for H, her brother, who was an invalid, and thereafter making other deposits in the same manner, keeping the bank book in a safety deposit box to which she and H had access, *Held:*
   (a) That the use of the word "for" indicated an intention to create a fiduciary relationship and to constitute herself a trustee of the fund for H;
   (b) That the effect of the deposit was to pass the equitable title to the fund completely and irrevocably to H, who is entitled to its possession after the death of B; and
   (c) That notice to H of such deposit was unnecessary, and acceptance by him of the benefit of the trust will be presumed.

*S. M. Johnson,* for plaintiff.
*W. F. Chambers* and *J. B. Kelley,* contra..

Oppenheimer, J.

The plaintiff, who is an invalid, resided for some time prior to March 18th, 1909, with his sister, Rose B. Boone. On that date Mrs. Boone went to the Brighton German Bank, in this city, and stated to the cashier of that institution that she desired to deposit some money for her brother, who was unable to come to the bank in person. Accordingly a deposit was made

in the savings department in the name of "Rose B. Boone for L. P. Herrmann," and a bank book was issued in the same name.

One of the clerks in the bank testified that at that time Mrs. Boone and plaintiff came to the bank in a buggy; that plaintiff remained outside in the buggy while Mrs. Boone came inside to make the necessary arrangements, and that he (the witness) then went out to the buggy and had plaintiff sign his name upon the identification card. Subsequently he again took the stand and stated that he was not certain whether plaintiff came to the bank and signed this identification card on March 18th, 1909, or in November, 1910, when plaintiff individually opened an account with the same bank. It is probable, however, that plaintiff did visit the bank with his sister on the earlier date, for at the same time Mrs. Boone rented a safety deposit box, and the receipt therefor was signed by plaintiff himself as deputy. Moreover, a description of the plaintiff was written upon the identification card, and there is no reason to believe that this would have been done if plaintiff had not been present, and if there had appeared to be no occasion for it.

Such expert testimony as has been introduced does not aid us in determining whether the name "Louis P. Herrmann" upon the identification card was written by plaintiff himself or by Mrs. Boone. And plaintiff's mental and physical condition is apparently such as to make it impossible for him to assist us in solving this problem in chirography even if his testimony were legally admissible.

No money was ever withdrawn from the bank by Mrs. Boone, but additional deposits were made from time to time in the same account, and the interest upon the deposits was permitted to accumulate until, at the time of her death in 1912, the entire deposit aggregated $1,046.77. Upon her death the book was found in the safety deposit box heretofore mentioned, to which plaintiff had access as her deputy, and two other books covering deposits in her own name in other banks were likewise found.

Mrs. Boone left a will in which she made a number of bequests, including one of $1,000 to plaintiff. But her funeral expenses and the expenses incurred in connection with her last illness, together with other debts incurred by her in her life-

time, exceeded the residue of her estate. Mrs. Josephine Hunt qualified as executrix under the will, and served in that capacity until recently when she resigned and was succeeded by Joseph B. Kelley, who was appointed and qualified as administrator *d.b.n. c.t.a.*

Plaintiff demanded of the Brighton German Bank the amount of the deposit in dispute claiming that it belonged to him. The bank thereupon interpleaded plaintiff and Mrs. Hunt as executrix, and pending the hearing it was agreed that the deposit should remain in bank and continue to draw interest. Meanwhile Wm. A. Boone, widower of Rose B. Boone, intervened as a creditor of the estate, claiming that unless this deposit is held to pass to the administrator and to be subject to the payment of the estate, he will be personally liable therefor.

We are now called upon to determine whether the deposit of the money by Mrs. Boone under the circumstances related operated either as a gift to Louis P. Herrmann or as a valid, executed trust in his favor. If it did, then the fund must now be awarded to him; if not, it will pass to the executrix or administrator and become subject primarily to the payment of the debts of Mrs. Boone's estate.

It is not suggested that there was any intention on the part of Mrs. Boone to make a gift *causà mortis*. We shall therefore first consider the essentials of a gift *inter vivos*, and endeavor to ascertain whether, under the circumstances indicated by the testimony, such gift was made in this case.

A gift *inter vivos* is an immediate, voluntary and gratuitous transfer of property by one person to another. To constitute a valid gift, the intention of the donor to make the gift must be clearly and satisfactorily established (*Worthington* v. *Redkey*, 86 O. S., 128). But mere intention, however clearly and positively it may be made to appear, is not sufficient. It must be consummated and carried into effect by such acts as are necessary to divest the donor of all right of property in the *res* which is the subject of the gift and to invest the donee therewith (*Worthington* v. *Redkey, supra; Martin* v. *Funk*, 75 N. Y., 134; *Wadd* v. *Hazelton*, 137 N. Y., 215). A complete unconditional delivery is essential to the perfection of the gift, but the manner

of delivery will, of course, depend upon the character of the thing which is given. The donor must part not merely with the possession, but also with the dominion and control of the property, and they must thereafter vest exclusively in the donee (*Flanders* v. *Blandy,* 45 O. S., 108; *Harrison Banking Company* v. *Miller,* 190 Mo., 640). It is not necessary, however, that the property be physically transferred from the possession of the donor to that of the donee. In some instances the property is already in the possession of the donee who holds it as agent for the donor, and in such case it is sufficient that the donor relinquish all domain over the property and recognize the possession of the donee as being in his own right (*Muir* v. *Gregory,* 158 Fed., 122; 168 Fed., 641; *Allen* v. *Cowen,* 23 N. Y., 502; *Newman* v. *Bost,* 122 N. C., 524). In other instances the property will remain in the possession of the donor, it being sufficient that he cease to hold in his original character as owner and thereafter hold as representative of the donee (*Yonken* v. *Hicks,* 93 Ill. App., 667; *Martin* v. *Funk, supra*). There are still other cases where the delivery will be made, not to the donee himself, but to a third person as agent or trustee, for the use of the donee, and under circumstances which unmistakably indicate an intention on the part of the donor to relinquish all right to the control of the property and to vest the present title in the donee. *Spray* v. *Glendinning,* 163 Ill. App., 431; *Jones* v. *Nicholas,* 151 Iowa, 362; *Vosburg* v. *Mallory,* 155 Iowa, 165; *Halliday* v. *Basil,* 170 Mich., 489; *Schauer* v. *Von Schauer* (Tex. Civ. App.), 138 S. W., 145.

Moreover the property may be of such a character as to make a manual delivery impossible. If such be the case, a constructive or symbolical delivery is sufficient (*Gano* v. *Fisk,* 43 O. S., 462; *Flanders* v. *Blandy, supra*). There are some cases which hold that, to perfect either a gift or a trust, the beneficiary must be informed of the donor's intention (*Gerrish* v. *Inst. for Savings,* 128 Mass., 159; *Bartlett* v. *Remington,* 59 N. H., 364). The weight of authority, however, favors the proposition that knowledge on the part of the beneficiary is not essential to the efficacy of the transfer, and that acceptance of the benefit of the trust will be presumed, because of the fact that ordinarily it is advantage-

ous to him. Thus, it has been said in the case of *Harvey* v.
*Gardner,* 41 O. S., 642, 649:

"In general, any gift by deed, will, or otherwise, is supposed
*prima facie,* unless the contrary appears, to be beneficial to the
donee. Consequently the law presumes, until there is proof to
the contrary, that every gift, whether in trust or not, is accepted
by the person to whom it is expressed to be given."

See also *Booth* v. *Bank,* 122 Cal., 25; *Koch* v. *Streuter,* 232 Ill.,
514; *Copeland* v. *Sommers,* 138 Ind., 219; *Sav. Inst.* v. *Hathorn,*
88 Me., 122; *Milholland* v. *Wahlen,* 89 Md., 212; *Pullis* v. *Iron
Company,* 157 Mo., 565; *Bank* v. *Schwoon,* 62 N. J. Eq., 503;
*Merigan* v. *McGonigle,* 205 Pa. St., 321; *Bank* v. *Albee,* 64 Vt.,
571; *Thornton on Gifts,* Sections 329, 341; 39 Cyc., 70.

There is a large class of cases which have to do with gifts of
bank deposits. Where a donor deposits money in the name of
the donee, and delivers to him or to a third person for him,
a pass-book therefor, it is manifestly his intention to pass the
legal title and control of the fund, and the gift is as complete
as it would be if the money were manually transferred to the
donee himself (*Russell* v. *Langford,* 135 Cal., 356; *Appeal of
Buckingham,* 60 Conn., 143; *Telford* v. *Patton,* 144 Ill., 611;
*Savings Inst.* v. *Titcomb,* 96 Me., 62; *Mulfinger* v. *Mulfinger,* 144
Md., 463; *Davis* v. *Ney,* 125 Mass., 590; *In re Crawford,* 113 N.
Y., 560). But frequently the intention is not so apparent, and it
is then necessary to examine the circumstances very carefully
in order to ascertain, if possible, the purpose of the donor.

In the case at bar, plaintiff was, because of his physical afflic-
tions, dependent upon Mrs. Boone. He lived with and was sup-
ported by her. She evidently realized that if anything were to
happen to her, he would necessarily become a charge upon others,
and so she determined to make some provision for him. There
can be no doubt that she desired him to benefit by these deposits
and that they were set apart for that purpose. The form in
which they were made indicates this, as does the fact that she
had several bank accounts in her own name in which she might
have deposited this money, if she had been content that plaintiff
should wait until her death to receive what she might leave him

by will.   The only doubt arises out of the fact that she retained control over the fund by keeping it in such form as to make it impossible ror anyone except herself to draw the money and then placing the book in her own safety deposit box.   It seems but natural, however, for her to arrange that only she might draw the money, for she knew that her brother was unable at all times to look after his own affairs.   Moreover, she continued to make deposits in the same account, for which purpose it was necessary that she retain the book.   Then, too, she may have desired to resume possession of the funds if he himself were to die (*In re Duffy*, 111 N. Y. Supp., 77) and the retention of the bank book was not in any event conclusive, even if she may be said to have retained it when she placed it in the box to which he had access as her deputy.   *Booth* v. *Bank*, 122 Cal., 25; *Appeal of Main*, 73 Con., 638; *Goelz* v. *Bank*, 31 Ind. App., 67; *Blaisdell* v. *Locke*, 52 N. H., 238; *Dunn* v. *Houghton* (N. J. Eq.), 51 Atl., 71; *Willis* v. *Smyth*, 91 N. Y., 297; *Atkinson's Petition*, 16 R. I., 413.

After much deliberation, we have reached the conclusion that that even if the testimony does not show clearly and unequivocally that the transfer was effective as a gift *inter vivos,* it was nevertheless effective as a voluntary and irrevocable trust created by Mrs. Boone for the use and benefit of plaintiff.   The distinction between such gift and trust may be said to be of a purely technical nature.   In the case of a gift, the legal title passes to and vests in the donee; while in a trust, the equitable title vests in the *cestui que trust*, while the naked legal title carrying with it the control of the property, rests in the trustee (*Savings Inst.* v. *Hathorn, supra*).   But thought the distinction is technical, it is nevertheless recognized by our Supreme Court in the case of *Flanders* v. *Blandy, supra,* the court quoting (at pages 114-115) with approval from the opinion of the Court of Errors and Appeals of New York in the case of *Young* v. *Young*, 80 N. Y., 430, as follows:

"The transaction is sought to be sustained in two aspects, first, as an actual executed gift, and secondly, as a declaration of trust.   These positions are antagonistic to each other, for if a trust was created, the possession of the bonds and the legal title thereto remained in the trustee.   In that case there was

no delivery to the donee, and consequently no valid executed gift, while if there was a valid gift, the possession and legal title must have have been transferred to the donee, and no trust was created.''

The word ''for'' upon the deposit book and card is, in our opinion, equivalent to ''trustee for.'' It unquestionably indicates a fiduciary relationship between the parties or a representation of one by the other. It also indicates beyond a doubt that Mrs. Boone intended, by making the deposit, to renounce her previous unqualified ownership of the money, and to retain the control in a purely representative capacity only. Thus, in the case of *Barker* v. *Harbeck,* 49 Hun., 609, it is said:

''A deposit of money in the bank for Henrietta Barker is either a deposit of money belonging to her, or a completed gift to her, and the depositor on drawing out the money holds it as her trustee.''

In the case of *Smith* v. *Lee,* 2 N. Y. Sup. Court Rep., 591, it appeared that D. P. Smith deposited money in bank in the name of ''D. P. Smith for Charles F. Smith.'' The court held that the former became a trustee for the latter, and that after the death of the former a complaint in an action in equity by the latter to obtain possession of the fund was not demurrable. See also *Fowler* v. *Bank,* 113 N. Y., 450, 452; *Donovan* v. *Welch,* 11 N. D., 113. This view is in accordance with the equitable principle that no particular form of words is necessary to create a trust.

''It is not essential that a trust should be labelled a trust to make it such legally. The absence of that term is only a circumstance, and often one of every little value and influence. There is no stereotyped collection of words for the edification of a trust. In equity there is no idolatry of words. Rights are the principals, remedies the accessories; the democracy of substance is preferred to the tyranny of form; the thing stated is more important than the statement of the thing.'' *Trust Co.* v. *Bank,* 1 N. P., 169, 171.

The law relating to so-called savings bank trusts is thus stated by Prof. Irvine, 39 Cyc., 68-70:

"The deposit of money in a bank by one person in trust for another raises a presumption that a trust was intended, and when supported by evidence showing the same intent or when not rebutted by evidence showing a contrary intent, creates a trust, which, according to most authorities, is complete and irrevocable, but which according to other authorities, is, in the absence of circumstances showing an intent to make it revocable, tentative and revocable during the life of the depositor, becoming absolute on his death without revocation and entitling the beneficiary to the balance remaining at the time of the depositor's death, but not to anything more than such balance. * * * Although these facts are sometimes construed, in connection with other facts, to show an intention not to create a trust, the retention of the bank book by the depositor, or the making of subsequent deposits and withdrawals, do not of themselves destroy the character of a trust of this nature, when it is once created and established, as it is consistent with the trust that these acts be done by the depositor as trustee."

In *Perry on Trusts,* Volume 1, Section 82, the rule is thus expressed:

"In case of a deposit in bank in trust for another, there must be an intent to pass the beneficiary interest during the life of the donor, and not merely a testamentary intent that the person named as *cestui* shall have the money at the decease of donor who retains complete control of the fund during his life. The general rule is that a deposit of money in the name of the depositor, in trust for another, transfers the title to the latter."

An examination of a few cases upon this subject will shed light upon the case at bar. In *Martin* v. *Funk, supra* (which is approved by our Supreme Court in *Worthington* v. *Redkey, supra*), the following facts appear: A deposit was made in the savings bank, the depositor declaring at the time that she wanted the account to be in trust for a certain person. The pass-book which the depositor retained, stated that the account was in trust for such person. The money remained in the bank until the depositor's death, except that one year's interest was withdrawn. The *cestui que trust* was ignorant of the trust until after the depositor's death. In an action by the beneficiary to recover possession of the pass-book and to recover the deposits, the court held that the transaction was a valid and sufficient dec-

laration of trust and passed the title to the deposits, and that a retention of the pass-book was not inconsistent with the completeness of the gift and that notice to the cestui que trust was not necessary. In *Savings Inst.* v. *Hathorn, supra,* it appears that the depositor retained the bank book until his death, and that he never communicated to the cestui his intention as to the deposit. The court held that the words "in trust for" in the entry of a savings bank deposit, with the same form used in the depositor's book, is sufficient to create a *prima facie* trust in favor of the donee where all the donor's declarations and acts are consistent with the presumption arising from the entry itself. The court said:

"It is not necessary, therefore, that he who declares a trust should divest himself of the legal title, if perchance he so does it as to transfer the real or equitable title to the cestui. * * * He may retain the legal title giving him control, but for the benefit of the cestui, according to the terms of the trust."

In *Sayre* v. *Weil,* 94 Ala., 466, it was held that a trust is complete and irrevocable when a person makes a deposit of money to the credit of himself as trustee for certain children named, and nothing remains in him but the mere naked legal title.

In *Gaffney's Estate,* 146 Pa., 49, it was held that a *prima facie* trust was established in favor of the beneficiary, although he never had possession of the bank book, where one deposited money to the credit of himself as trustee, and the money remained until his death.

In *Blaisdell* v. *Locke, supra,* it appears that a deposit was made in a savings bank in the name of one who was the niece of the depositor, the latter intending that it should be a gift, but retaining the bank book until her death. In an action by the beneficiary against the bank to recover the deposit, it was held that although there was no complete gift *inter vivos,* yet the deposit created a trust in favor of the niece and her acceptance of it rendered her title absolute although there was no delivery of the bank book.

In *Robertson* v. *McCarty,* 54 App. Div., 103, it was held that a deposit by one in trust for another created an irrevocable trust

in the entire deposit, although the depositor retained possession of the bank book, and the beneficiary did not know of the trust until the donor's death.

In *Jenkins* v. *Baker,* 77 App. Div., 509, it appears that a woman opened a savings bank account in her own name in trust for her husband and deposited therein sums which, with interest, aggregated approximately $1,400. About six months later she drew out all of such sums and gave $650 thereof to her daughter. She died shortly thereafter, without disclosing to her husband the existence of the account and without making any declaration in respect thereto. It was held that, in the absence of testimony showing a contrary intention, the opening of the account in trust furnished sufficient proof that the woman intended to create a trust in favor of her husband and that the withdrawal of the money from the account before her death did not rebut the inference to be drawn from the opening of the account. The court quotes with approval the language of court of appeals in *Cunningham* v. *Davenport,* 77 N. Y., 43:

"The doctrine laid down by this court in previous cases amounts to this: That the act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining the possession of the bank book, and failing to notify the beneficiary, creates a trust, *if the depositor dies before the beneficiary leaving the trust account open and unexplained.* If the intent can be strengthened by acts and declarations of the depositor during his lifetime amounting to a publication of his intention, a more satisfactory case is made out, but it is not absolutely essential, in the absence of explanation, where he dies leaving the trust account existing."

In the case of *Harris Banking Company* v. *Miller, supra,* it appears that decedent deposited a fund in bank, and upon advice as to the method of transferring the fund to the *cestui que trust,* took back a certificate of trust and endorsed it to the *cestui,* then notifying the bank and the *cestui* that the certificate was held by the depositor for the latter, who retained the right to use the income during his lifetime. It was held that although a perfect gift *inter vivos* was not shown, there was evidence sufficient to sustain the contention that a valid trust

in favor of claimant was created and the fund was accordingly awarded to him. The court says:

"It does not follow that because a party is not able to establish a perfect gift *inter vivos,* he or she may not show a perfect, valid trust and have it enforced. The decision in Soulard's case (141 Mo., 642), is a complete refutation of such position. In that case it was ruled that there was no valid gift and yet it was held that a valid expressed trust had been created, and it was enforced."

The fact that there was no written declaration in the case at bar does not affect our views. In *Perry on Trusts,* Section 86, it is said:

"There does not seem to be any objection, however, to the establishment of a trust in personal property by parol. The owner, in the absence of a statute, has entire control of it. He can sell and transfer it without writing and by parol, and if he can transfer it by parol, there is no reason why he may not, by parol transfer it upon such lawful terms, and to such uses and trusts as he may desire. * * * When a person *sui juris,* orally or in writing, explicity or implicity, declares that he holds personal property for another, he thereby constitutes himself an express trustee."

In *Savings Inst.* v. *Titcomb,* 96 Me., 61, it is said:

"The creation of a trust is but a gift of an equitable interest. An unequivocal declaration as effectually passes the equitable title to the *cestui que trust* as delivery does the legal title to the donee of a gift *inter vivos.* One may constitute himself trustee by a mere declaration."

In *Gerrish* v. *Inst. for Savings,* 128 Mass., 159, it is said:

"There is in the case at bar no formal written declaration. But no particular form of words is required to create a trust in another, or to make the party himself a trustee for the benefit of another. It is enough for the latter purpose that it be unequivocally declared in writing or orally, if the property be personal, that it is held in trust for the purpose named."

And to the same effect, see *In re Soulard,* 141 Mo., 662; *Pomeroy's Eq. Jur.,* Section 1008; *Ames on Trusts,* 47, 186.

Counsel for defendants cite several Ohio cases, upon which the following comments may be made:

*Estate of Galbraith,* 4 O. L. R., 186: The testimony in this case conclusively showed that decedent did not intend to part with the dominion and control over the bonds which were the subject of the controversy. The alleged donee testified that decedent had asked her if she would return the bonds if required to do so, and that she replied in the affirmative. The court properly held that the bonds must be listed as part of the estate of the decedent.

*Hamor* v. *Moore's Admrs.,* 8 O. S., 239: This was an action in *assumpsit* upon a written promise in which the intestate directed his executors to pay a specified amount to plaintiff or to her sons, after his decease. The court held that it was not intended as a gift *inter vivos* and that it was not complete as a gift *causa mortis.* It is apparent that no delivery of the amount set out was ever intended by decedent to take place during his lifetime, and the case can not shed any light upon the case at bar.

*Gano* v. *Fisk,* 43 O. S., 462: This case deals entirely with gifts *causa mortis* and decides that direction by an intestate to divide a certain property after his death is not sufficient to constitute such gift.

*Starr* v. *Starr,* 9 O. S., 75; *Simmons* v. *Sav. Society,* 31 O. S., 457, and *Johnson* v. *Otterbein,* 41 O. S., 527, are cases dealing with mere promises, without consideration, which are manifestly revocable at any time by the promisor.

We are of the opinion that the fund in this case should be awarded to plaintiff, and a decree may be entered to that effect.